RAINBOW SPRINGS PARTNERSHIP v. COUNTY OF MACON

No. 8510PTC474

(Filed 18 February 1986)

1. **Taxation § 25.7— highest and best use of property—hunting and fishing club— use after granting of conservation easements**

    The State Property Tax Commission did not err in determining that the highest and best use of property, owned by petitioner and upon which it had granted conservation easements, was for hunting, fishing, and other recreational activities, though petitioner's expert witnesses testified that the highest and best use prior to the easements was as investment property to be developed in the future, since respondent's expert witness testified that the property, both before and after granting of the easements, was used for a hunting and fishing club, and this was the highest and best use for it; the property was in an area where no development was taking place; the property subject to the easement was the more steeply sloped land, less accessible than

other land in the entire tract; and some years earlier, development of a large tract of adjoining land failed, and the property was sold to the U. S. Government to be a part of the National Forest.

**2. Taxation § 25.5— valuation—experts' testimony—date of valuation immaterial**

Even if the State Property Tax Commission erred in finding that petitioner's expert witnesses gave opinions of the value of the land in question for some date other than 1 January 1983, the date on which property taxes were assessed, such error would not entitle petitioner to relief since that finding was not the basis for rejection of petitioner's contended valuation.

**3. Taxation § 25.7— value of property—findings proper**

The State Property Tax Commission did not err in failing to make an explicit finding that The Nature Conservancy had affirmative rights to use petitioner's property pursuant to conservation easements.

APPEAL by petitioner from the North Carolina Property Tax Commission. Final Decision entered 15 November 1984. Heard in the Court of Appeals on 31 October 1985.

*Van Winkle, Buck, Wall, Starnes and Davis by Larry McDevitt and Marla Tugwell for petitioner appellant, Rainbow Springs Partnership.*

*Jones, Key, Melvin & Patton by R. S. Jones, Jr., for respondent appellee, Macon County.*

COZORT, Judge.

Rainbow Springs Partnership (hereinafter "Partnership") appeals from a ruling of the State Property Tax Commission (hereinafter "Commission") assessing the value of a 2,252-acre tract upon which the Partnership granted conservation easements. The Commission determined that the highest and best use of the property, both before and after the granting of the easements was, and is, "for hunting, fishing, and other recreational activities"; found the granting of the easements reduced the value of the encumbered property by 45%; and concluded that the true value of the encumbered acreage is $500.00 per acre. Having reviewed the whole record in accordance with G.S. 105-345.2, we affirm, finding the Commission's decision to be supported by substantial evidence.

The facts and procedures necessary for an understanding of the issues considered on appeal are as follows:

Rainbow Springs Partnership v. County of Macon

As of 1 January 1983, the Partnership was the owner of 2,252.2 acres, with certain improvements, in Macon County. The County assessed property taxes based on an acreage of 2,546.46 acres, which it valued at $2,566,180.00. The Partnership appealed the County's assessment to the Macon County Board of Equalization and Review which upheld the County's valuation. The Partnership appealed to the State Property Tax Commission sitting as the State Board of Equalization and Review. At the hearing before the Commission, the parties stipulated that the acreage to be taxed was 2,252 acres and that, at a minimum, the County would reduce the valuation accordingly, regardless of the final decision by the Commission.

The Partnership contended it was entitled to a reduction in fair market value due to certain conservation easements it had granted to The Nature Conservancy. The County contended that the conservation easements had no effect on the fair market value of the property. At the hearing before the Commission on 23 August 1984, the parties stipulated the issue to be tried was: What was the fair market value of the Partnership's real property located in Macon County as of 1 January 1983?

The evidence showed that the Partnership is the owner of 258.20 acres known as the Carpenter tract, against which no conservation easement has been granted. It owns a non-contiguous tract, the Slagle tract, containing 1,998.63 acres. By deeds executed in 1980 and 1982, it granted to The Nature Conservancy conservation easements encumbering 1,838 acres in the Slagle tract. There are several improvements, including a lodge, on the Slagle tract.

The easements were granted in perpetuity by two deeds. The Commission found, without objection, that both deeds contained essentially the same covenants by the Partnership:

1. There shall be no hunting of bear or non-game animals; no commercial trapping; no construction or placing of buildings, camping accomodations [sic], mobile homes, fences, signs, billboards, other advertising material, or other structures;

2. There shall be no filling; excavating; dredging; mining or drilling; removal of topsoil, sand, gravel, rock, or minerals; nor construction of roads, except as provided herein;

3. There shall be no removal, intentional destruction, or cutting of trees or plants, planting of trees or plants, spraying of biocides, grazing of domestic animals, or disturbance or change in the natural habitat in any manner, except as provided herein;

4. There shall be no dumping of ashes, trash, garbage, or other unsightly or offensive material, and no changing of topography through the placing of soil or other substance or material such as landfill or dredging spoils. There shall be no manipulation or alternation [sic] of natural water courses, lake shores, marshes, or other water bodies. There shall be no activities or uses conducted on the Protected Property which are detrimental to water purity; and

5. There shall be no operation of snowmobiles, dune buggies, motorcycles, all terrain vehicles, or other types of motorized vehicles, except on roads unless necessary either for purposes of security and enforcement of these Covenants, or for uses not restricted by this grant, provided that any off-road use be in a manner consistent with the preservation of the Protected Property and its plant and animal populations and their habitat.

While fee simple title to the property remains in the Partnership, the covenants contained in the easements run with the land in perpetuity.

Both deeds reserve for the Partnership the right to use the property subject to the easements for all purposes not inconsistent with the granting of the easements. Subsequent to the granting of the easements, however, the Partnership cannot use the property for developmental purposes or timbering. Prior to the granting of the easements, the property under appeal was used exclusively for hunting and fishing by the Partnership.

In the early 1970's the Partnership was approached with a proposal to sell portions of its property for development. Some large tracts of land bordering on the Partnership's property were purchased several years ago for development, but the project was unsuccessful. The Partnership's property is surrounded by heavily forested woodland, the majority of which is owned by the United States Forest Service. The closest residential development is three to five miles from the property.

The County valued the Carpenter tract at $1,440.00 per acre for 1983 and valued the Slagle tract at $972.00 per acre for 1983. The County valued the improvements on the Slagle tract at $104,-330.00 for 1983. In appraising the Slagle tract, the County did not consider the effect on value of the conservation easements.

The Commission determined that the highest and best use of the property, both before and after the granting of the easements, was, and is, "for hunting, fishing and other recreational activities." It also concluded that "[t]here has been a reduction in value of most of the acreage under appeal as a result of the granting of the conservation easements, although there has been no change in the highest and best use of the property as a result of the easements." The Commission rejected the County's position that there was no reduction in value of the Partnership's property as a result of the granting of the easements. It concluded that the reduction in value of the acreage encumbered by the easements was 45%. Accordingly, the Commission concluded that the true value of the acreage in the Slagle tract encumbered by conservation easements, as of 1 January 1983, was $500.00 per acre, for a total of $919,000.00. The Partnership excepted to this conclusion. The true value of the improvements under appeal, as of 1 January 1983, was found to be $118,000.00. The Partnership took no exception to the values placed on the unencumbered acreage of the Slagle tract, the unencumbered Carpenter tract, and the improvements on the property under appeal. It excepted to the Commission's conclusion that the true value of all the real property under appeal as of 1 January 1983 was $1,579,820.00.

On appeal the Partnership contends:

(1) The Commission committed prejudicial error in concluding that the highest and best use of the land before the Partnership granted the conservation easements was for hunting, fishing, and other recreational activities;

(2) The Commission erred in failing to adopt the valuations of William Cantrell, the Partnership's expert witness "in the field of conservation easements," the only expert in that specific category;

(3) The Commission erred in finding that Cantrell and another of the Partnership's experts, Robert York, gave opinions of the value of the land for a date other than 1 January 1983; and,

(4) The Commission erred in failing to find that The Nature Conservancy has affirmative rights to use the property pursuant to the conservation easements and in finding that the use of the property by the Partnership is exclusive.

[1] We have elected to consolidate the first two issues listed above because both present the same issue, *i.e.*, whether the Commission's conclusion on the highest and best use of the property before the granting of the easements is erroneous and not supported by substantial evidence because the Commission, in effect, adopted the opinion of the County's expert, Sam Pipkin, rather than the opinion of the Partnership's expert, William Cantrell.

The scope of appellate review of cases from the Property Tax Commission is set by G.S. 105-345.2, which provides, in pertinent part, that:

> (b) . . . The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

> \*    \*    \*    \*

> > (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

> > (6) Arbitrary or capricious.

> (c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error.

This standard of review is known as the "whole record" test. In *Thompson v. Wake County Board of Education*, Justice Copeland explained the "whole record" test:

> This standard of judicial review is known as the "whole record" test and must be distinguished from both *de novo* review and the "any competent evidence" standard of review. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 95 L.Ed.

> 456, 71 S.Ct. 456 (1951); *Underwood v. Board of Alcoholic Control,* 278 N.C. 623, 181 S.E. 2d 1 (1971); Hanft, *Some Aspects of Evidence in Adjudication by Administrative Agencies in North Carolina,* 49 N.C. L. Rev. 635, 668-74 (1971); Hanft, *Administrative Law,* 45 N.C. L. Rev. 816, 816-19 (1967). The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo, Universal Camera Corp., supra.* On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn. *Universal Camera Corp., supra.*

292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977). The whole record test is not "a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *In re Rogers,* 297 N.C. 48, 65, 253 S.E. 2d 912, 922 (1979).

After "all the competent evidence in the record has been examined, the reviewing court must decide if it is substantial. 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [Citations omitted.] 'Substantial evidence is more than a scintilla or a permissible inference.' [Citations omitted.]" *Thompson v. Wake County Board of Education, supra,* 292 N.C. at 414-15, 233 S.E. 2d at 544.

In the instant case, the issue is whether the Commission's finding of "true value" is supported by substantial evidence, as previously defined. The property's "true value" is its "market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is

capable of being used." G.S. 105-283. G.S. 105-317(a)(1) (1981) sets forth various factors to consider in determining the true value of the land. The Historic Preservation and Conservation Agreements Act, G.S. 121-34, *et seq.*, recognizes and provides for the entering into and enforcement of "conservation agreements." With respect to taxation, "land and improvements subject to a conservation or preservation agreement shall be assessed on the basis of the true value of the land and improvement less any reduction in value caused by the [conservation] agreement." G.S. 121-40. The parties do not dispute that the easements granted by the Partnership to The Nature Conservancy fall within the purview of G.S. 121-34, *et seq.* To find the true value of the property, the Commission had to determine the market value prior to the granting of the easements and then reduce that value by applying a damage factor caused by the granting of the conservation easements. Determining the highest and best use of the property prior to the granting of the easement was a critical part of the appraisal process.

The evidence of the highest and best use of the property prior to the granting of the easement was in conflict. The Partnership offered an expert, William Cantrell, who testified that the highest and best use prior to the easement was as investment property to be developed in the future. Based on that opinion, Cantrell applied an 85% damage factor to the encumbered property, arriving at a per acre value of $150.00. The Partnership offered a second expert, A. Robert York, who also testified that the highest and best use prior to the easement was for "potential future development and investment holding." He also appraised the property in its encumbered state at $150.00 per acre. The County's expert, Sam Pipkin, testified that the highest and best use of the property prior to the easements was the use to which it had been put, a "Hunting and Fishing Club." He assigned a damage factor of 45% to the property and valued the property in its encumbered state at about $500.00 an acre. Pipkin testified that the encumbered property was in an area where no development was taking place. The evidence showed that the property subject to the easement was the more steeply sloped land, less accessible than other land in the entire tract. Some years earlier, development of a large tract of adjoining land failed, and the property was sold to the United States Government to be a part of the National Forest.

The Commission's decision indicates it rejected the testimony of the Partnership's experts and essentially adopted the opinion of the County's expert, Pipkin. We find no error in the Commission's decision. The Commission was not required to accept the opinion of Cantrell, even though he was, in the Partnership's view, the "most qualified" expert because he was the only expert witness in the field of conservation easements. Resolving conflicts in the evidence and weighing the credibility of the witnesses is for the fact-finder, in this case, the Commission. *See In re Appeals of the Greensboro Office Partnership*, 72 N.C. App. 635, 325 S.E. 2d 24, *disc. rev. denied*, 313 N.C. 602, 330 S.E. 2d 610 (1985). A review of the whole record fully supports the Commission's decision. The Commission's judgment "as between two reasonably conflicting views" is supported by substantial evidence, which does not permit this Court to overturn the Commission's decision. *Thompson v. Wake County Board of Education, supra,* 292 N.C. at 410, 233 S.E. 2d at 541.

[2] Next, we consider the Partnership's contention that the Commission erred in finding that the Partnership's experts, Cantrell and York, gave opinions of the value of the land for some date other than 1 January 1983.

In its Findings of Fact Nos. 27 and 34 (to which the Partnership took exception), the Commission found:

(27) William Cantrell, a witness for the Partnership, appraised the property under appeal as of two dates: November 11, 1980, and August 20, 1982.

\*   \*   \*   \*

(34) Robert York, a witness for the Partnership, appraised the property under appeal as of December 12, 1982.

The Partnership argues that these findings are erroneous because Cantrell testified that he updated his opinion as of 1 January 1983, and York testified that his opinion on the value of the land was as of 1 January 1983.

The appraisal reports introduced into evidence by the Partnership affirmatively support the findings made by the Commission. While Cantrell's testimony indicates that he did update his opinion of value to 1 January 1983, York's testimony indicates

that he updated his opinion only as to the value of the three tracts which were excluded from the easement. Regardless of whether these witnesses did update their opinions to 1 January 1983, it affirmatively appears from the record that neither of these witnesses made any change in their valuations from the respective dates thereof, up to 1 January 1983.

More importantly, however, even if the Commission erred in finding that the valuation dates in question were other than 1 January 1983, it is evident from the Commission's decision that the valuation dates reported were not the reason for the Commission's rejecting the Partnership's position. Rather, the Commission rejected the Partnership's valuation because it was not persuaded that the highest and best use of the property, prior to the granting of the easements, was for future development and investment purposes. Also, since the Commission found no significant change between the highest and best use of the property before and after the easements, the Commission rejected the 85% damage factor utilized by Cantrell.

When the findings that are supported by competent evidence are sufficient to support a judgment, the decision will not be disturbed because another finding, which does not affect the conclusion, is erroneous. *Dawson Industries, Inc. v. Godley Construction Co., Inc.*, 29 N.C. App. 270, 275, 224 S.E. 2d 266, 269, *disc. rev. denied*, 290 N.C. 551, 226 S.E. 2d 509 (1976). That principle of law is applicable here. The assignment of error is overruled.

[3] Finally, the Partnership contends the Commission erred in failing to find that The Nature Conservancy has affirmative rights to use the property pursuant to the conservation easements and in finding that the use of the property by the Partnership is exclusive.

By its Findings of Fact Nos. 16 and 17 the Commission found:

(16) Subsequent to the granting of the easements, the property has been used for private purposes, almost exclusively for hunting and fishing, by the Partnership.

(17) Only the eleven members of the Partnership and their guests can use the property for these purposes.

The Partnership claims these findings are erroneous, alleging the Commission failed to find that the "Nature Conservancy can take

groups to the Partnership's property by giving thirty (30) days' notice, permission not to be unreasonably withheld." The Partnership interprets Findings of Fact Nos. 16 and 17 to constitute a finding that the use of the property by the Partnership is exclusive. A careful reading shows that the Commission found that after the granting of the easements, the property had been used for private purposes by the Partnership and that the Partnership's use was almost exclusively for hunting and fishing. This does not impart that no other use can be made of the property.

There is no question that the terms of the easement give certain rights to The Nature Conservancy. These rights are personal, however, to The Nature Conservancy and its staff members. The Commission did include within its findings of fact that "the Partnership granted a conservation easement in perpetuity over certain portions of the property under appeal," referring to the deed books and pages where the easements were recorded. The easements were a part of the record before the Commission. The Commission's failure to explicitly make the finding as stated by the Partnership is not prejudicial error.

In sum, a review of the whole record shows that the Commission's decision is supported by competent, material, and substantial evidence. Since we have determined that the decision has a rational basis in the evidence, the Commission's decision is

Affirmed.

Judges WEBB and BECTON concur.