IN THE MATTER OF: APPEAL OF THE LANE COMPANY-HICKORY CHAIR
DIVISION FROM THE DECISION OF THE CATAWBA COUNTY BOARD OF
EQUALIZATION AND REVIEW CONCERNING REAL PROPERTY TAXATION
FOR TAX YEAR 1999

No. COA01-1343

(Filed 17 September 2002)

**1. Appeal and Error— assignments of error—too broad and
vague**

A motion to dismiss an appeal for violation of the appellate
rules was denied despite broad, vague, and unspecific assign-
ments of error.

**2. Taxation— review of Property Tax Commission—whole
record test**

The standard of review of a decision of the Property Tax
Commission is the whole record test, under which the review-
ing court determines whether the decision of the Commission is
supported by substantial evidence.

**3. Taxation— ad valorem—property valuation—sales compar-
ison approach adopted over income approach**

The Property Tax Commission did not err in finding that the
county employed an arbitrary method of valuing a furniture man-
ufacturing facility where the Commission made clear findings
that it gave greater weight to expert testimony supporting the
sales comparison approach rather than to testimony supporting
the income approach used by the county. The Commission found
that the county's assessment did not reflect the true value of the
property and, while the county's use of a table of values shows an
objective process in the county's valuation, it does not prove that
the valuation and assessment was not arbitrary.

**4. Taxation— ad valorem—property valuation—presumption
of correctness—rebutted**

A taxpayer sufficiently rebutted the presumption of the cor-
rectness of the county's property tax assessment where there was
testimony that the county's use of the income approach did not
represent the true value and the county's original assessment sub-
stantially exceeded both the county's subsequent modified
assessment and an appraisal from the taxpayer's expert.

**5. Taxation— ad valorem—property valuation—arbitrary**

Although a county contended in a property tax assessment case that the taxpayer's argument was an attack on the county's schedule of values rather than on the appraisal, the Property Tax Commission's holding that the county employed an arbitrary appraisal method was based on the finding that the county's income method did not produce a true value. The lack of sufficient data merely bolsters the argument for arbitrariness and was not an attack on the schedule of values.

**6. Taxation— ad valorem—property—valuation—post-octennial sales**

The Property Tax Commission did not err by valuing property lower than had the county where the county's presumption of correctness was lost when the taxpayer offered substantial rebutting evidence. The post-octennial sales comparisons used in the taxpayer's appraisal were of comparable properties rather than the subject property.

Appeal by Catawba County from the Final Decision of the North Carolina Property Tax Commission. Heard in the Court of Appeals 22 August 2002.

*Jerry E. Hess for Catawba County/Appellant.*

*Bell, Davis & Pitt, P.A., by John A. Cocklereece, Jr., Stephen M. Russell and Kevin G. Williams, for Taxpayer/Appellee.*

TYSON, Judge.

Catawba County appeals the Final Decision of the North Carolina Property Tax Commission ("Commission"), entered 11 June 2001 which valued the subject property at $2,020,000.00. We affirm the decision of the Commission.

## I. Facts

### A. Description of Property

The Lane Company ("Taxpayer") owns a multistory manufacturing facility of approximately 573,980 feet located on 10.54 acres in Catawba County.

The original facility was built in the 1920's. Multiple additions were made in the 1950's and 1960's, with one addition built as recently

IN RE APPEAL OF LANE CO.

[153 N.C. App. 119 (2002)]

as 1980. The facility's use is devoted to the manufacturing of residential furniture products, one of the businesses of the taxpayer. The overall age of the building is estimated to be fifty years with a remaining life of fifteen to twenty years.

Testimony before the Commission tended to show that the overall condition of the building is physically poor due to cracked floors and walls and sags in the ceilings. The Commission found that the improvements are functionally obsolete due to ceiling heights and varying levels of the floors, and that certain areas of the building are not used for these reasons.

Catawba County assessed the property at a total value of $3,820,000; $3,360,900 for the improvements and $459,100 for the land for the year 1999. Taxpayer appealed the county's assessment of the property to the county board of equalization and review, and the board affirmed the county's value. At the hearing before the Commission, the county adjusted the total assessment to $3,459,500.

## B. Valuation Procedures

Catawba County employs three appraisal methods including cost, income capitalization, and sales comparison to value property for assessment of ad valorem taxes. The county utilized the income approach to value the subject property with an initial assessment of $3,820,000. The income approach is used to measure the present worth of the future benefits of a property by the capitalization of a net income stream over the remaining economic life of the property. According to Billy E. Little ("Little"), a real estate appraiser employed by Catawba County and the county's expert at the hearing, the income capitalization approach is used to value 90-95% of all commercial property in Catawba County. The income method was applied to information supplied by the owners of manufacturing facilities who responded to a questionnaire. Six of the responders owned facilities containing more than 100,000 square feet of manufacturing space. Mr. Little testified that the county used 20 different property record cards while employing the income approach to consider the varying age and condition of this property.

James Marlow, MAI SGA ("Marlow"), qualified as an expert witness, and testified that use of the income capitalization method was improper to assess the value of the subject property. Marlow explained that the income method did not reflect the motivations of buyers and sellers of this type of property. Marlow further explained

that the cost method was improper because of the substantial accrued depreciation, physical deterioration, and functional obsolescence associated with the building. Marlow testified that the sales comparison approach was the best method for valuing the subject property, as it is direct evidence of the marketplace and the subject property's position in the market. Marlow stated that the sales comparison approach was particularly appropriate here due to the facility being used by the owner.

The sales comparison approach compares the subject property with market data based upon an appropriate unit of comparison. Marlow's investigation of the subject property's value produced few local sales of properties. Marlow testified that the market for manufacturing facility property is regional in scope. Marlow cited eight representative sales, used these comparables with adjustments to determine the market value for the subject property, and opined the fair market value at $3.50 per square foot of building area. The Commission relied on Marlow's testimony to hold that Catawba County employed an arbitrary method of appraisal in reaching the assessed value. A divided Commission (3-2) valued the property at $2,020,000. Catawba County appeals.

## II. Issues

Catawba County contends the Commission erred by (1) finding that the county employed an arbitrary method of valuation of the subject property and in deciding that the finding was supported by competent, material and substantial evidence, (2) failing to afford a presumption of correctness to the county's valuation of the subject property using the comparable sales method of assessment, (3) allowing Taxpayer to challenge the county's Schedule of Values during its appeal of the assessment of the subject property, and (4) finding that the true value of the subject property as of 1 January 1999, was two million twenty thousand dollars ($2,020,000).

## III. Motion to Dismiss

[1] Taxpayer moved to dismiss the county's appeal based on alleged violations of Rules 10 and 28 of the North Carolina Rules of Appellate Procedure. Rule 10 sets forth the requirements for assigning error on appeal and Rule 28 outlines the function and content of the appellate briefs. "[T]he appellant must except and assign error separately to each finding or conclusion that he or she contends is not supported by the evidence, then state which assignments support which ques-

tions in the brief." *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 684, 340 S.E.2d 755, 750-760 (1986).

Catawba County's assignments of error on appeal as found in the record are broad, vague, and unspecific. They allege the final decision of the Commission to be "[u]nsupported by competent, material and substantial evidence in view of the entire record . . . and [a]ffected by other errors of law, to wit: failure to follow the mandate of clearly applicable and controlling decisions of the North Carolina Supreme Court and Court of Appeals."

These assignments of error do not comply with the North Carolina Rules of Appellate Procedure: "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C. R. App. P. 10(c)(1). "A single assignment generally challenging the sufficiency of the evidence to support numerous findings of fact, as here, is broadside and ineffective." *Wade v. Wade*, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266 (1985).

Here, the assignments of error contend four separate and distinct errors in two general assignments of error (one as to the facts and the other as to the conclusions of law) in violation of the rule.

The Rules of Appellate Procedure are designed to expedite appellate review. Catawba County's failure to observe the requirements of the Rules subjects their appeal to dismissal. *See Bowen v. N.C. Dep't. of Health and Human Servs.*, 135 N.C. App. 122, 519 S.E.2d 60 (1999); N.C. R. App. P. 25(b), 34(b)(1). Nevertheless, we will consider the arguments pursuant to N.C. R. App. P. 2. Taxpayer's motion to dismiss is denied.

## IV.  Standard of Review

[2] Our standard of review of a decision of the Commission is the "whole record" test. *See* N.C.G.S. § 105-345 (d), N.C.G.S. § 7A-29 (2001). The reviewing court is not allowed to substitute its own judgment in place of the Commission's judgment even where there are two reasonably conflicting views. *Rainbow Springs Partnership v. County of Macon*, 79 N.C. App. 335, 341, 339 S.E.2d 681, 684 (1986). A reviewing court must determine whether the decision of the Commission is supported by substantial evidence when using the whole record test. *Id.* at 341, 339 S.E.2d at 685.

" 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 341, 339 S.E.2d at 685 (quoting *Thompson v. Board of Education,* 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977) (citations omitted)). "[T]he credibility of the witnesses and resolution of conflicting testimony is a matter for the administrative agency to determine." *In re Appeal of General Tire,* 102 N.C. App. 38, 40, 401 S.E.2d 391, 393 (1991) (citing *Comr. of Insurance v. Rate Bureau,* 300 N.C. 381, 406, 269 S.E.2d 547, 565, *reh'g denied,* 301 N.C. 107, 273 S.E.2d 300-01 (1980)). If the Commission's decision is supported by substantial evidence, this Court must affirm the Commission's decision. *Rainbow Springs,* 79 N.C. App. at 343, 339 S.E.2d at 686.

## V. Sufficiency of Evidence

**[3]** Catawba County contends that the Commission erred in finding that the county employed an arbitrary method of valuation as unsupported by competent, material and substantial evidence in the entire record. The county asserts there is a lack of substantial evidence because there are no findings of fact supporting the decision of arbitrariness in the final decision. Secondly, the county relies on its schedule of values to show the assessment is not arbitrary. We disagree.

The Commission made clear findings of fact that it gave greater weight to the testimony of Marlow than to Little. The Commission found that the county's assessment did not reflect the "true value" of the property. "True value" is defined as "market value":

[T]hat is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C.G.S. § 105-283 (2001).

Since "[a]n illegal appraisal method is one which will not result in 'true value' as that term is used in [N.C. Gen. Stat. § 105-283]", it follows that such method is also arbitrary. *In re Southern Railway,* 313 N.C. 177, 181, 328 S.E.2d 235, 239 (1985). The Commission made sufficient findings of fact to show that the method employed by the county was arbitrary.

**IN RE APPEAL OF LANE CO.**

[153 N.C. App. 119 (2002)]

Secondly, the county argues that the schedule of values, as first proposed to the County Commissioners and the public in 1998, shows the Tax Assessor spent years preparing for its 1999 octennial reevaluation. County relies on *In re Allred*, 351 N.C. 1, 519 S.E.2d 52 (1999) in arguing that the use of a schedule of values indicates an objective and consistent evaluation.

In *Allred*, the Supreme Court held that the taxpayer did not present any evidence of "misapplication of the schedules, standards and rules used in the county's most recent general reappraisal or horizontal adjustment . . . ." *Id.* at 11-12, 519 S.E.2d at 58. The Court stated, "[t]he use of schedules and values and rules of application not only makes the valuation of a substantial number of parcels of property feasible, but also ensures objective and consistent countywide property valuations and corollary equity in property tax liability." *Id.* at 10, 519 S.E.2d at 57.

Although the schedule of values shows an objective process in the county's valuation procedures as a whole, it does not prove that the valuation and assessment of the subject property was itself not arbitrary. The schedule of values standing alone does not support reversing the Commission's ruling that the valuation method employed by the county was arbitrary. This assignment of error is overruled.

## VI. Presumption of Correctness

[4] Catawba County cites *In Re Appeal of Amp, Inc.*, 287 N.C. 547, 215 S.E.2d 752 (1975) to support the presumption of correctness of the assessments. In *Amp*, our Supreme Court held that ad valorem tax assessments are presumed to be correct. *Id.* at 562, 215 S.E.2d at 761. To rebut the presumption, the taxpayer must present "competent, material and substantial evidence that tends to show that: (1) [e]ither the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation AND (3) the assessment *substantially* exceeded the true value in money of the property." *Id.* at 563, 215 S.E.2d at 762.

Marlow testified that he considered, but excluded, the income approach in his analysis because it would not reflect the motivations of buyers and sellers in the marketplace, and that the county's assessment did not represent the "true value." This evidence supports the Commission's finding that the county's use of the income approach to value was an arbitrary method. This evidence is also sufficient to rebut the first prong of presumption of correctness.

The other prong of the *Amp* presumption is whether the assessment substantially exceeded the true value in money of the property. *Id.* at 563, 215 S.E.2d at 762. The taxpayer must show that the valuation was unreasonably high. *Electric Membership Corp. v. Alexander,* 282 N.C. 402, 410, 192 S.E.2d 811, 816-17 (1972).

Here, the county's original assessment was $3,820,000. Catawba County admitted this exceeded the fair market value by conceding before the Commission that the value of the property did not exceed $3,459,500, a difference of $360,500. Marlow's appraisal valued the property at $2,020,000. The difference in value between the original assessment is $1,800,000. The difference between the modified assessment by the county and that of Taxpayer is $1,439,500. Either difference is a substantial difference. Taxpayer satisfied its burden to prove to the Commission that the county's assessment substantially exceeded the true value of the property.

We hold that the Commission's findings of fact are based on substantial evidence, and that its findings of fact support its conclusions of law. Taxpayer successfully rebutted the presumption of correctness of the county's assessed value.

### VII. Effect of Challenge to Schedule of Values

[5] Catawba County contends that Taxpayer's arguments are attacks on the schedule of values and not on the appraisal of the property being evaluated. Taxpayer argued before the Commission that insufficient data was available to the county for the purpose of creating a schedule of values for use in an income capitalization assessment.

There is no indication in the Commission's order that it relied in any way on the insufficiency of the data to determine the income method was arbitrary. The order indicates the Commission's finding that the value reached under the income method was not the "true value". This is the basis the Commissioners used to find the income method arbitrary. The lack of sufficient data merely bolsters the argument for arbitrariness and is not an attack on the schedule of values.

The Commission determines the weight and sufficiency of the evidence and the credibility of the witnesses. The Commission draws inferences to appraise the conflicting evidence. *In re Southern Railway,* 59 N.C. App. 119, 123 296 S.E.2d 463, 467, *rev'd on other grounds,* 313 N.C. 177, 328 S.E.2d 235 (1985). Since the Commission's

decision was not solely based on the insufficiency of data and is based on substantial evidence in the record, we overrule this assignment of error.

## VIII. True Value

**[6]** Catawba County assigns error to the Commission's valuation of the property. The Commission assigned the value of $2,020,000 as appraised by Taxpayer's expert witness. The county argues that the county's tax appraiser was not afforded the substantial rights a presumption of correctness creates. See *In re Appeal of Camel City Laundry Co.*, 115 N.C. App. 469, 475, 444 S.E.2d 689, 692 (1994).

This argument fails because the substantial rights afforded by the presumption of correctness are lost when the taxpayer offers substantial rebutting evidence. The burden of producing evidence to show the tax assessment is correct now rests on the county. *See In re Southern Railway*, 313 N.C. 177, 182, 328 S.E.2d 235, 239 (1985).

The county further contends that the use of Taxpayer's appraisal report was inappropriate because two of the eight comparative sales used were not made until after the effective date of the county's octennial reevaluation. County relies on the *Allred* case in support of its position. *In re Allred*, 351 N.C. 1, 519 S.E.2d 52 (1999).

The Supreme Court held in *Allred* that post-octennial sales data of the property under review was an impermissible basis for valuation adjustment as it "impinge[d] upon the statutory requirement that any adjustment to a general valuation be made 'in accordance with the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment.'" *Id.* at 13, 519 S.E.2d at 59 (quoting N.C.G.S. § 105-287(c) (2001)). We agree that a post-octennial sale of the property in question cannot be used for a valuation adjustment.

Here, the post-octennial sales comparisons used by Taxpayer's expert were not sales of the subject property, but of comparable properties, adjusted by Marlow to compensate for the changing values over time. Also, the post-octennial sale comparisons were properly admitted. The difference in time goes to the weight of the evidence and not its admissibility. We find this case distinguishable from *Allred*. We hold that the Commission may use post-octennial sales comparables of other properties to base its valuation of the subject property.

IX. Summary

The whole record test only allows us to determine whether the decision of the Commission was based on substantial evidence. The weight and credibility of the evidence remains for the Commission.

Taxpayer's expert testimony provided substantial evidence for the Commission to find that the county employed an arbitrary method of valuation. The tax assessment was significantly greater than the valuation offered by Taxpayer's expert witness and accepted by the Commission. The presumption of correctness was rebutted; once rebutted, the county did not offer additional evidence to meet its burden to show its valuation was the "true value". The Commission's decision is supported by substantial evidence in the record and is affirmed.

Affirmed.

Judges MARTIN and THOMAS concur.