HEDINGHAM COMMUNITY ASSOCIATION, Plaintiff v. GLH BUILDERS, INC., Defendant

No. COA05-1320

(Filed 1 August 2006)

**1. Appeal and Error— broadside assignments of error—public interest issues—Appellate Rule 2**

An appeal from an order involving a group home in a subdivision with contrary restrictive covenants was heard under Appellate Rule 2 despite broadside assignments of error because the case presented public interest issues.

**2. Deeds— restrictive covenants—group home—public policy**

Plaintiff's attempt to enforce its restrictive covenants to prohibit use of a house as a family care home for girls with emotional or mental disabilities who are not dangerous to others was void as against public policy under N.C.G.S. § 168-23.

Appeal by Plaintiff from orders filed 20 December 2004 by Judge Craig Croom and 21 February 2005 by Judge Shelley Desvousges in Wake County District Court. Heard in the Court of Appeals 12 April 2006.

*BEWLAW, PLLC, by Brent E. Wood, for Plaintiff-Appellant.*

*Manning Fulton & Skinner, P.A., by William C. Smith, Jr., for Defendant-Appellee.*

STEPHENS, Judge.

Chapter 168 of the North Carolina General Statutes establishes the public policy of this State "to provide persons with disabilities with the opportunity to live in a normal residential environment." N.C. Gen. Stat. § 168-20 (2005). This case raises the issue of whether a home owned by Defendant in the Hedingham residential subdivision in east Raleigh, which is used to house up to four girls between the ages of ten and seventeen who have a primary diagnosis of mental illness or emotional disturbance, is protected by Chapter 168 from certain restrictive covenants and conditions sought to be enforced by Plaintiff, Hedingham Community Association. For the reasons which follow, we hold that the home in dispute qualifies as a "family care home" under N.C. Gen. Stat. § 168-21 and that consequently, the restrictions asserted by Plaintiff to limit or prohibit such use of the home are "void as against public policy" under N.C. Gen. Stat. § 168-23. We thus affirm the orders of Judge Croom and Judge Desvousges.

Plaintiff brought this action by a complaint filed on or about 23 October 2003 alleging that Defendant was in violation of the Declaration of Covenants, Conditions, and Restrictions ("restrictive covenants") related to leasing or subdividing of "units" in the Hedingham subdivision, or using the "unit" to conduct a prohibited business. Plaintiff sought a preliminary and permanent injunction to restrain Defendant from violating its restrictive covenants. By answer filed on or about 18 November 2003, Defendant denied that it had violated the specific covenants in question. Defendant further asserted that it was operating a group home for children on Defendant's property and that Plaintiff's complaint was "a thinly disguised objection to the lawful operation of a group home."

On 11 June 2004, Judge Craig Croom heard Plaintiff's motion for a preliminary injunction and by order filed 20 December 2004 *nunc*

*pro tunc* 11 June 2004, concluded that Defendant's lessee, Hunter Alternatives, Inc.,[1] was operating a family care home on Defendant's property which was protected by N.C. Gen. Stat. § 168-23 from enforcement of the restrictive covenants urged by Plaintiff. Concluding further that Plaintiff had failed to show a likelihood of success at a trial on the merits of Plaintiff's case, Judge Croom denied the motion for a preliminary injunction.

The case was then tried nonjury before Judge Shelley Desvousges on 9 February 2005. At trial, Plaintiff's evidence tended to show the following:

Hedingham is a large planned-unit subdivision with approximately 2,350 single-family homes in east Raleigh. Plaintiff is a North Carolina nonprofit corporation formed for the purpose of performing the duties and responsibilities set out in Hedingham's Declaration of Covenants, Conditions, and Restrictions for Hedingham. Defendant is a North Carolina corporation owned by Grady L. Hunter. Defendant owns 4301 Dyer Court, a single-family home in Hedingham ("the Dyer house").

When this case was initiated, Defendant was leasing the Dyer house to Hunter Alternatives, Inc., a North Carolina corporation owned in equal parts by Mr. Hunter and Dorothy George. Hunter Alternatives is the original licensee through the State of North Carolina Department of Health and Human Services, Division of Facility Services, to operate a group home for up to four disabled minors at the Dyer house. The license is now held by Triangle Alternatives[2] ("Triangle") to which all the shares of Hunter Alternatives were sold during the course of this case. Ms. George is Triangle's director.

The Dyer house is licensed under 10A N.C.A.C. 27G. 1300 (May 1996), which is titled "Residential Treatment for Children and Adolescents Who Are Emotionally Disturbed or Who Have A Mental Illness." Criteria for residence in homes licensed under this section are that the residents be "children and adolescents who have a primary diagnosis of mental illness or emotional disturbance . . . and for whom removal from home . . . to a community-based residential setting is essential to facilitate treatment." 10A N.C.A.C. 27G. 1300(a) and (c) (May 1996).

---

1. This entity is also called "Hunter Alternative, Inc." at various times in the record and testimony.

2. This entity is also variously referred to as "Triangle Alternative."

Ms. George testified that only girls have lived at the Dyer house during the time it has been licensed and that, whereas it can accommodate up to four girls at a time, "the most that there's been there is three." At the time of trial, only one resident was living at the house. The youngest resident placed at the house was ten years old, and the oldest was sixteen. Ms. George estimated that in the two and a half years before trial, no more than ten total residents had lived at the house, none of whom was biologically related. The girls who are placed there have behavior and developmental disabilities.

As Triangle's director, Ms. George said her primary responsibility is to make certain the services offered at the Dyer house "are provided in the appropriate way that the state rules and regulations require us to operate under." To provide those services, Triangle employs three staff persons who work in eight-hour shifts to monitor and supervise the residents twenty-four hours a day. No staff person lives at the Dyer house, and the staff people "cannot sleep because the residents have to be supervised 24 hours." Regarding the services that are provided for the residents, Ms. George testified as follows:

> Treatment is not provided to these children on this property. . . . We provide . . . care for these children 24 hours around the clock making sure that they [get] to their therapist's appointments, their doctor's appointments, and whatever other appointments they have in the community. . . .[W]e don't provide mental health services at this location. These children are transported for their services. We provide the transportation for them.

Ms. George testified further that staff people also make the children's meals and "do all the caretaking while they're placed in our care." Staff employees must have an NCI (North Carolina Interventions) certification, know CPR, and be certified to give medications. A physician must order residents into the program for at least 120 days. Ms. George could not recall more than one resident who remained in the program at the Dyer house for more than six months. Medicaid pays Triangle $232.36 per child per day for the services provided at the Dyer house.

Triangle does have "a qualified mental health professional on call at any time that is needed in case of an emergency. . .[and] a counselor that comes in once a week [to] talk with the children." The counselor usually sees the children at Triangle's office location unless "there is an emergency and the counselor has to go to the home[.]" Emergency situations include suicide threats and crisis intervention

"to de-escalate the situation before it develops into a crisis." At the Dyer house, according to Ms. George, "we've had nothing that has been out of control. Nobody has gotten hurt. . . ."

Ms. George testified that police officers have been called to the Dyer house on several occasions when a child has walked away from the property and been gone for more than fifteen minutes. "Fifteen minutes after we cannot see a child in our sight, we have to call the police because we have to report that they've walked away from the program." Ms. George estimated that police officers had been called to the Dyer house about ten times between December 2002 and December 2003.[3]

Plaintiff also called as a witness Geri Blackford, the community manager at Hedingham for approximately ten years. Ms. Blackford testified that she became familiar with the Dyer house property because of the complaints she received from other Hedingham residents. She said that she drove by the property "one day and there were four police cars out front[.]" The officers informed Ms. Blackford that "there was a problem going on and they were sitting there to try and resolve it." That was the only incident at the Dyer house that Ms. Blackford had observed. She testified further that parking at the property had been "an issue . . . [f]rom time to time."

Ms. Blackford conceded that the Hedingham restrictive covenants do not prohibit group homes or family care homes "*per se.*" She agreed that the covenants permit leases, although not subleases, and that Plaintiff has no right to "disapprove a lease[.]" She was not aware of any other group homes at Hedingham, but acknowledged that there are day-care facilities in the subdivision "run out of people's houses . . . that were . . . otherwise built for residential homes[.]" She also conceded that she was aware of "domestic situations[,]" "break-ins . . . and other matters" requiring police officers to answer calls at other residences in Hedingham.

Ms. Blackford agreed that the Dyer house is "just a regular single-family residence construction[,]" with no signs out front identifying it as a group or family care home, that has not been modified in any way to give it an "institutional character[.]" She agreed further that the yard is "well kept" and the house is well maintained as far as she can see from the outside. Ms. Blackford had no evidence that the resi-

---

3. Officers were also called to the home during 2004, but Ms. George did not know how many times.

dents of the Dyer house had ever been violent, or hurt someone, or been a danger to anyone.

At the close of Plaintiff's evidence, Defendant moved to dismiss Plaintiff's case under N.C. Gen. Stat. § 1A-1, Rule 41(b). The trial judge allowed the motion and in a written order filed 21 February 2005, made the following pertinent findings of fact:

3. Plaintiff proffered the testimony of Gerry [sic] Blackford who . . . testified that she believed the maintenance of the [Dyer] Home was in violation of certain restrictive covenants applicable to Hedingham.

4. Blackford further testified that she had witnessed four police cars responding to a call at the Home on one occasion.

5. Blackford provided no testimony that the residents or staff at the Home had ever caused or threatened to cause injury to any person or property at Hedingham.

. . . .

7. [Dorothy] George testified that the residents of the Home suffered from mental illness or emotional disturbance.

8. George testified that the Home housed up to four girls at one time, up to the age of 17, for stays that could exceed six months. George further testified that the residents were not dangerous to others, and had not inflicted or attempted to inflict or threatened to inflict serious bodily harm on others.

9. George testified that the Home provides only room, board, and transportation services for the residents.

Upon these findings, Judge Desvousges concluded that (1) the Dyer house is a "family care home" within the meaning of N.C. Gen. Stat. § 168-21(1); (2) the residents of the home are "handicapped persons"[4] as defined in N.C. Gen. Stat. § 168-21(2); (3) the residents are not "dangerous to others" as defined in N.C. Gen. Stat. § 122C-3(11)(b); (4) Plaintiff "made no showing that the Home or its residents fall outside the protections provided under N.C. Gen. Stat. § 168 *et. seq[,]*" and Plaintiff failed to show any right to relief; and (5) any attempt to use the Hedingham restrictive covenants to prohibit the use of the Dyer house as a family care home "or its current use as

___

4. By amendment effective 1 September 2005, "[p]ersons with disabilities" was substituted for "handicapped persons" in this provision.

a facility licensed under 10A N.C.A.C. 27(G).1300, is void as against public policy. . . ." The court thus dismissed Plaintiff's complaint with prejudice. Plaintiff appeals.

[1] To challenge the trial court's rulings in this case, Plaintiff made the following assignments of error:

> 1. The Trial Court erred in denying Plaintiff's Motion for Preliminary and Permanent Injunction, since the facts presented warranted the entry of an injunction as a matter of law.

> 2. The Trial Court erred in dismissing the Plaintiff's claims pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure, since the Plaintiff had shown a right to relief.

> 3. The Trial Court erred in its conclusions of law entered on February 21, 2005.

> 4. The Trial Court denied due process of law to the Plaintiff by granting judgment for the Defendant.

To support assignment of error one, Plaintiff references the pages in the Record on Appeal at which the entire orders of Judge Croom and Judge Desvousges appear. To support the additional three assignments of error, Plaintiff references the pages where the entire order of Judge Desvousges appears. Plaintiff brings forward all four assignments of error under one argument in its brief that "[t]he trial court erred in dismissing Plaintiff's claims . . . because Plaintiff has established a right of relief by showing Defendant violated the declaration."

Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure governs the form required for assigning error to actions of the trial tribunal. In pertinent part, this Rule requires that:

> Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned. An assignment of error is sufficient if it directs the attention of the appellate court to the *particular error* about which the question is made, with clear and *specific* record or transcript references.

N.C.R. App. P. 10(c)(1) (2005) (emphasis added). Assignments of error which are "broad, vague, and unspecific [sic] . . . do not comply with the North Carolina Rules of Appellate Procedure[.]" *In re Lane*

*Company-Hickory Chair Div.*, 153 N.C. App. 119, 123, 571 S.E.2d 224, 226-27 (2002). Moreover, "the appellant must except and assign error separately to each finding or conclusion that he or she contends is not supported by the evidence, then state which assignments support which questions in the brief." *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 684, 340 S.E.2d 755, 759-60, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986). Additionally, although questions challenging the sufficiency of evidence to support a *"particular"* finding of fact may be combined with challenges against any conclusions of law "based upon such . . . findings," N.C.R. App. P. 10(c)(3) (emphasis added), failure to assign error to specific findings of fact of the trial court renders those findings binding on this Court, which must conclude that they are supported by competent evidence. *Koufman v. Koufman*, 330 N.C. 93, 408 S.E.2d 729 (1991).

In *Viar v. N.C. DOT*, 359 N.C. 400, 610 S.E.2d 360, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005), our Supreme Court admonished this Court for considering the merits of an appeal despite several violations of the appellate rules. Noting that the Rules of Appellate Procedure are mandatory, the Court held that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant. . . . [T]he Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, . . ." *Viar*, 359 N.C. at 402, 610 S.E.2d at 361.

Since *Viar*, this Court has struggled with when it may still be appropriate to invoke the provisions of Rule 2 to "suspend or vary the requirements" of the Rules "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest," N.C.R. App. P. 2 (2005), and thereby to reach the merits of cases in which Rule violations would subject the appeal to dismissal. *(See* North Carolina Association of Defense Attorneys, *Appellate Procedures and Technicalities*, 29th Annual Meeting (2006), for a survey of post-*Viar* decisions in this Court and our Supreme Court.) In this case, Plaintiff's appeal is plainly subject to dismissal for broadside, nonspecific assignments of error which " 'essentially amount to no more than an allegation that the "court erred because its ruling was erroneous." ' " *Hubert Jet Air, LLC v. Triad Aviation, Inc.*, 177 N.C. App. 445, 448, 628 S.E.2d 806, 808 (2006) (citation omitted); *see also In re Election Protest of Fletcher*, 175 N.C. App. 755, 625 S.E.2d 564 (2006). Such assignments of error "allow counsel to argue anything and everything they desire in their brief on appeal[] [and] 'like a hoop-skirt–cover[] everything and touch[] nothing.' " *Wetchin v. Ocean*

*Side Corp.*, 167 N.C. App. 756, 759, 606 S.E.2d 407, 409 (2005) (citation omitted). Nonetheless, because we believe that the question presented by this case raises "public interest" issues, we choose to exercise our authority under Rule 2 and consider the merits of the appeal despite the violations of Rule 10.

---

**[2]** "Where there is a trial by the court, sitting without a jury, the appropriate motion by which a defendant may test the sufficiency of plaintiff's evidence to show a right to relief is a motion for involuntary dismissal." *Vernon v. Lowe*, 148 N.C. App. 694, 695, 559 S.E.2d 288, 290, *rev'd on other grounds*, 356 N.C. 421, 571 S.E.2d 584 (2002) (citation omitted). Rule 41(b) of the North Carolina Rules of Civil Procedure provides, in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . , may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this section . . . , operates as an adjudication upon the merits.

N.C. Gen. Stat. § 1A-1, Rule 41(b) (2005). "A dismissal under Rule 41(b) should be granted if the plaintiff has shown no right to relief or if the plaintiff has made out a colorable claim but the court nevertheless determines as the trier of fact that the defendant is entitled to judgment on the merits." *Hill v. Lassiter*, 135 N.C. App. 515, 517, 520 S.E.2d 797, 800 (1999). The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if there is evidence to the contrary. *Lumbee River Electric Membership Corp. v. City of Fayetteville*, 309 N.C. 726, 741, 309 S.E.2d 209, 219 (1983) (citation omitted). Where the findings of fact in turn support the court's conclusions of law, the court's ruling is binding on appeal. *Id.* "The trial court's judgment therefore must be granted the same deference as a jury verdict." *Id. (citing Murray v. Murray*, 296 N.C. 405, 250 S.E.2d 276 (1979)).

Chapter 168 defines a "family care home" as "a home with support and supervisory personnel that provides room and board, per-

sonal care and habilitation services in a family environment for not more than six resident persons with disabilities." N.C. Gen. Stat. § 168-21(1). The statute defines "persons with disabilities" (formerly "handicapped persons") as "a person with a temporary or permanent physical, emotional, or mental disability including but not limited to mental retardation, . . . [and] emotional disturbances. . . ." N.C. Gen. Stat. § 168-21(2). It excludes from this definition "mentally ill persons who are dangerous to others as defined in G.S. 122C-3(11)b." *Id.* Chapter 122 provides in pertinent part that

> "[d]angerous to others" means that within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property[.]

N.C. Gen. Stat. § 122C-3(11)b.

If a group home qualifies under Chapter 168 as a "family care home," the statute expressly prohibits "[a]ny restriction, reservation, condition, exception, or covenant in any subdivision plan, deed, or other instrument of or pertaining to the . . . lease, or use of property which would . . . prohibit the use of such property as a family care home. . . ." N.C. Gen. Stat. § 168-23. Such restrictions on the use of residential property are "void as against public policy and shall be given no legal or equitable force or effect." *Id.* Our Supreme Court has stated that Chapter 168, "being remedial, should be construed liberally, in a manner which assures fulfillment of the beneficial goals for which it is enacted and which brings within it all cases fairly falling within its intended scope." *Burgess v. Joseph Schlitz Brewing Co.*, 298 N.C. 520, 524, 259 S.E.2d 248, 251 (1979) (citations omitted).

On appeal, Plaintiff argues that the provisions of Chapter 168 are not applicable here for various reasons, including (a) Plaintiff's contention that the operation of the Dyer house constitutes a business enterprise inconsistent with the residential character of Hedingham, (b) the Dyer house is a residential treatment facility and not a family care home, (c) the record is unclear with respect to the extent of the disabilities of the residents of the Dyer house, and (d) the evidence establishes that the residents of the Dyer house are dangerous to others. Plaintiff's arguments have no merit for the following reasons:

The trial court's findings of fact include findings that (1) the Dyer house, through Triangle Alternatives, is duly licensed by the State of

North Carolina, has appropriate zoning approval, and is in compliance with all applicable laws and ordinances; (2) the only services provided to the residents of the Dyer house are room, board and transportation; (3) the residents of the home suffer from mental illness or emotional disturbance; and (4) the home houses no more than four girls at one time. As Plaintiff has not assigned error to any of these findings, they are conclusive on appeal, *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731 ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."), and our inquiry is thus limited to a determination of whether the findings of fact support the trial court's conclusions of law on the issues that control the outcome of the case. In our opinion, these findings fully support the court's Conclusion of Law 4 that the Dyer house is a family care home, "or a home with support and supervisory personnel that provides room and board, personal care and habilitation services in a family environment for not more than six resident handicapped persons" (now "persons with disabilities"). N.C. Gen. Stat. § 168-21(1). They also support the court's Conclusion of Law 5 that the residents of the Dyer house are " 'handicapped persons' or persons with temporary or permanent emotional or mental disabilities including emotional disturbances [under] N.C. Gen. Stat. § 168-21(2)."

The trial court additionally found that (1) the residents of the Dyer house have never caused or threatened to cause injury to any person or property at Hedingham, (2) are not dangerous to others, and (3) have not inflicted or attempted to inflict or threatened to inflict serious bodily harm on others. Not having been challenged by a specific assignment of error, these findings of fact are likewise binding on this appeal, and they support the court's Conclusion of Law 6 that the Dyer house is not precluded from offering its services to its residents under the exclusion for "mentally ill persons who are dangerous to others as defined in G.S. 122C-3(11)(b)." N.C. Gen. Stat. § 168-21(2). Since the trial court properly concluded upon binding findings of fact that the Dyer house is a family care home for persons with emotional or mental disabilities who are not dangerous to others, the court further properly ruled that Plaintiff's attempt to enforce its restrictive covenants to prohibit the use of the Dyer house as a family care home is void as against public policy under N.C. Gen. Stat. § 168-23. The court thus properly dismissed Plaintiff's action with prejudice under Rule 41(b) of the North Carolina Rules of Civil Procedure.

Our determination of these issues renders it unnecessary to address Plaintiff's remaining arguments that Defendant's use of the Dyer house violates the restrictive covenants applicable to all Hedingham residents. For the reasons stated, the orders of the trial court are

Affirmed.

Judges McGEE and HUNTER concur.