PENNY M. RUMPLE RICHARDSON, EMPLOYEE, PLAINTIFF-APPELLEE v. MAXIM HEALTH-
CARE/ALLEGIS GROUP, EMPLOYER, AND KEMPER INSURANCE COMPANY/
AMERICAN PROTECTION INSURANCE c/o SPECIALTY RISK SERVICES,
CARRIER, DEFENDANTS-APPELLANTS

No. COA06-875

(Filed 5 February 2008)

1. **Appeal and Error— preservation of issues—failure to in-
clude record or transcript references**

Defendants' third assignment of error in the record on ap-
peal in a workers' compensation case is dismissed based on a
failure to include clear and specific record or transcript refer-
ences in violation of N.C. R. App. P. 10(c), because: (1) defend-
ants made only a blanket reference to transcript volumes I and
II without making reference to a particular error, and there
are 3,285 transcript pages in the transcripts; and (2) defendants
failed to specify which documents should have been included
in the transcripts, and failed to provide specific record or tran-
script references.

2. **Workers' Compensation— notice of accident—timeliness—
findings of fact—reasonable excuse for failing to pro-
vide written notice—prejudice based on delay in written
notification**

The Industrial Commission erred in a workers' compensation
case by failing to address whether plaintiff employee timely re-
ported her claim under N.C.G.S. § 97-22 and whether her case
should be barred for her failure to do so because: (1) although the
evidence demonstrated, and the full Commission found, that de-
fendant had actual knowledge of plaintiff's accident, the
Commission failed to make the crucial finding that plaintiff pro-
vided a reasonable excuse for her failure to timely provide writ-
ten notice of her accident; and (2) N.C.G.S. § 97-22 also requires
that the Commission be satisfied that the employer has not been
prejudiced by the delay in written notification, and the mere
existence of actual notice without more cannot satisfy the statu-
torily required finding with respect to prejudice. The case is re-
manded for specific findings with respect to whether plaintiff
satisfied her burden of showing a reasonable excuse for not pro-
viding defendant employer with written notice of her accident
within thirty days of its occurrence, and for adequate findings of
fact with respect to the issue of prejudice to defendant employer.

**3. Workers' Compensation— causation of injuries—compe-
tent evidence—headaches—hand and wrist—knee—breast
implants**

Although the Industrial Commission did not err in a workers'
compensation case by finding there was competent evidence that
causally related plaintiff's various injuries to her motor vehicle
accident of 16 May 2001 including for headaches, her right hand
and wrist, and her knee, it erred when it concluded plaintiff sus-
tained compensable injuries to her bilateral breast implants. The
case is remanded for a determination of the appropriate amount
of compensation for the replacement of plaintiff's right breast
implant, because although breast implants satisfy the statutory
requirement under N.C.G.S. § 97-2(6) as compensable prosthetic
devices that functions as part of the body, plaintiff's breast
implant surgeon testified unequivocally that the rippling in the
left breast implant most likely was due to the original implant's
being underfilled and that the rippling was not caused or aggra-
vated by the accident.

**4. Appeal and Error— preservation of issues—failure to
argue**

Although defendants contend the full Commission erred in a
workers' compensation case by its finding of fact number 24, this
assignment of error is dismissed, because defendants failed to
make an argument in their brief relating to this assignment of
error or the full Commission's findings with respect to plaintiff's
teeth as required by N.C. R. App. P. 28(b)(6).

**5. Workers' Compensation— disability—burden of proof**

The Industrial Commission did not err in a workers' compen-
sation case by concluding that plaintiff carried her burden of
proving disability because: (1) plaintiff showed that defendant
did not provide light-duty work to her other than for two days in
June 2002, a doctor testified that plaintiff would have difficulty
performing her regular job until at least February 2003 following
her knee surgery in June 2002, and plaintiff showed she was
placed on one-handed work restrictions by a doctor that was
scheduled to continue until at least January 2004; (2) although
plaintiff returned to work on a few occasions during the pertinent
time period, such intermittent and infrequent work days did not
constitute a successful trial return to work; and (3) defendants
failed to carry their burden of proving that plaintiff was capable

of obtaining suitable employment and failed to rebut the ongoing presumption of disability.

## 6. Workers' Compensation— lien—third-party settlement

The Industrial Commission erred in a workers' compensation case by failing to award defendants a lien on all amounts accepted by plaintiff in her third-party settlement with her uninsured motorists carrier, and the case is remanded for findings consistent with this Court of Appeals opinion, because: (1) N.C.G.S. § 97-10.2(j) provides that either party may apply to the superior court for a determination of the subrogation amount, regardless of whether both parties consented to the third-party settlement, if justified by the equities of the case; (2) contrary to the full Commission's conclusion, defendants' credit does not depend upon an award by the superior court since N.C.G.S. § 97-10.2(h) clarifies that the lien is automatic, and instead plaintiff may apply to the superior court for a determination of the lien amount under N.C.G.S. § 97-10.2(j); and (3) unless and until plaintiff applies to the superior court for a determination of the subrogation amount, defendants are entitled to a lien on all corresponding uninsured motorist benefits received by plaintiff, less the portion expended for the cost of replacing plaintiff's left breast implant.

Judge WYNN dissenting.

Appeal by defendants from Opinion and Award of the Full Commission of the North Carolina Industrial Commission entered 15 March 2006. Heard in the Court of Appeals 20 February 2007.

*Anne R. Harris, for plaintiff-appellee.*

*Robinson & Lawing, L.L.P., by Jolinda J. Babcock and Eleasa H. Allen, for defendants-appellants.*

JACKSON, Judge.

Maxim Healthcare/Allegis Group ("defendant-employer") and its insurance carrier, Kemper Insurance Company/American Protection Insurance c/o Specialty Risk Services (collectively, "defendants"), appeal from an order of the Full Commission of the North Carolina Industrial Commission ("Full Commission") filed 15 March 2006 awarding workers' compensation benefits to Penny M. Rumple Richardson ("plaintiff"). For the reasons stated below, we affirm in

part, reverse in part, and remand for further proceedings not inconsistent with this opinion.

In 1996, plaintiff began working for defendant-employer, a medical staffing agency with approximately 400 employees. As a certified nursing assistant, plaintiff worked either in a long-term care facility or in a client's home. Plaintiff's work duties varied with the particular assignment and "could be very strenuous to very light," with work ranging from total patient care to sitting with an elderly or disabled patient. Work assignments were made either when an employee contacted defendant-employer to see if work was available or when defendant-employer contacted an employee seeking to fill a particular assignment. Employees could turn down jobs, and many of defendant-employer's employees, including plaintiff, worked a sporadic schedule.

On 16 May 2001, plaintiff was assigned work assisting a paraplegic client with bathing, dressing, and general care. Plaintiff left the client's house to pick up food, and while traveling at approximately fifty-five miles per hour in the right-hand lane, another vehicle drifted out of the left-hand lane and struck plaintiff's vehicle. The impact caused plaintiff's vehicle to spin out of control and strike a cement median barrier. The vehicle's air bags did not deploy, and plaintiff hit her head and right knee on something in the car. The driver of the other vehicle did not stop. As a result of the accident, plaintiff immediately experienced swelling in her face and right knee. Plaintiff also sustained injuries to her chest as a result of the accident.

Emergency Medical Services ("EMS") arrived at the scene of the accident and noted that plaintiff complained of pain in the left side of her head. EMS also noted edema to the left side of plaintiff's upper lip. EMS transported plaintiff to Moses Cone Memorial Hospital, where she was treated for headache, difficulty breathing, contusions, swelling around her mouth and chin, and moderate pain and soreness around her head, face, and chest.

Additionally, plaintiff began experiencing a decrease in the size of her breast implants as well as a rippling of the breasts almost immediately after the motor vehicle accident. Plaintiff, who had obtained the implants approximately five years prior to the accident, reported her concerns to the physicians at the emergency room. The physicians performed a visual inspection but noted no asymmetry.

Within twenty to thirty minutes after the accident, plaintiff called defendant-employer and reported the accident to her supervisor. Defendant-employer acknowledged that it first learned of the injury on 16 May 2001—the date of the accident—on Industrial Commission Form 19, dated 9 August 2002. Also shortly after the accident, plaintiff filed uninsured motorists claims with Nationwide Insurance ("Nationwide")—the insurance carrier for plaintiff's motor vehicle—for the personal injuries she sustained as a result of the accident.

On 17 May 2001, plaintiff presented to her family physician at Eagle Family Medicine, complaining of significant soreness, particularly in her shoulders and upper back. The physical examination revealed tenderness and soft tissue swelling over plaintiff's left cheek as well as a contusion on the inside of her upper lip. Plaintiff was given a note that provided that she was not to return to work until 6 June 2001 due to medical reasons.

On 31 May 2001, plaintiff presented to Dr. David M. Bowers ("Dr. Bowers"), a board certified specialist in plastic surgery, and expressed concerns "that there was a decrease in the size of the implants, fairly immediately [after the accident]." Plaintiff also informed Dr. Bowers of "some rippling in the implants" and that she was "no longer filling out the bras that she . . . bought post surgery." Dr. Bowers testified that plaintiff's right breast implant had ruptured, and the left breast implant, although it did not appear to have ruptured, exhibited signs of rippling. On 7 June 2001, Dr. Bowers performed bilateral breast re-augmentation—specifically, he removed the original implants and replaced them with new implants. Nationwide paid Dr. Bowers for his work, pursuant to plaintiff's claim with Nationwide. Following the surgery on 7 June 2001, Dr. Bowers restricted plaintiff from working until 24 July 2001.

Plaintiff also sought treatment for her right knee. Prior to the accident, she had undergone two knee surgeries, after which plaintiff had been able to return to work without restrictions. Following the accident, plaintiff began experiencing pain and swelling in her right knee, and on 9 July 2001, she presented to Dr. Peter G. Dalldorf ("Dr. Dalldorf") for treatment. Dr. Dalldorf confirmed plaintiff's complaints and referred her to physical therapy. Plaintiff followed up with Dr. Dalldorf on 30 July 2001, complaining of "intense pain since her accident" in her right knee. As a result, Dr. Dalldorf injected plaintiff's right knee and restricted plaintiff from working from 9 July 2001 until 6 August 2001.

RICHARDSON v. MAXIM HEALTHCARE/ALLEGIS GRP.

[188 N.C. App. 337 (2008)]

Plaintiff returned to work on a regular basis on 7 August 2001,[1] but ceased working on 6 October 2001 to have surgery on her right knee on 9 October 2001. Between October 2001 and May 2002, when plaintiff returned to Dr. Dalldorf, she was limited in her abilities to crawl, climb, or stoop as well as lift, position, and turn patients. Nevertheless, plaintiff regularly contacted defendant-employer requesting to be assigned to light-duty jobs that she was capable of performing. Plaintiff testified that defendant-employer rarely offered her modified work that she was physically capable of performing, and during this time, plaintiff worked a total of eight days, performing light-duty jobs as they became available and were offered to her. Defendant-employer used plaintiff's wages on nearly all of these days to pay her health insurance costs.

On 25 June 2002, Dr. Dalldorf performed a second post-accident surgery on plaintiff's right knee. Plaintiff has not worked since this surgery and has been under work restrictions from her physicians. On 8 October 2002, Dr. Dalldorf performed a third post-accident surgery on plaintiff's knee. Dr. Dalldorf testified that although plaintiff had chondromalacia patella prior to the motor vehicle accident, plaintiff's motor vehicle accident aggravated her pre-existing condition, and she would not have needed the three surgeries but for the motor vehicle accident. Dr. Dalldorf further noted on 5 February 2003 that plaintiff would have trouble performing her regular job duties.

Plaintiff also has experienced discomfort in her right hand since the accident. On 22 January 2003, plaintiff presented to Dr. Marshall C. Freeman ("Dr. Freeman"), complaining that she had been experiencing bilateral hand numbness and tingling, especially on her right hand, since May 2001. Plaintiff also explained her hand condition to Dr. Dalldorf on 5 February 2003. Dr. Dalldorf reviewed the nerve conduction studies performed by Dr. Freeman, noted that the studies revealed a mild carpal tunnel syndrome on her right hand, and injected plaintiff's hand with Depo-Medrol. Plaintiff returned to Dr. Dalldorf on 26 February 2003, complaining of continued discomfort in her right hand. Having already prescribed a brace and injection for plaintiff, Dr. Dalldorf decided to refer plaintiff to Dr. Gary R. Kuzma ("Dr. Kuzma").

---

1. The Full Commission found that plaintiff had "worked a few days between May 20 and May 24, 2001, for which she received pay, although she had been restricted from work. . . . [P]laintiff also worked two half-days in July 2001, but was not paid for those days. Her wages were used to pay her health insurance premiums."

**RICHARDSON v. MAXIM HEALTHCARE/ALLEGIS GRP.**

[188 N.C. App. 337 (2008)]

On 6 March 2003, plaintiff presented to Dr. Kuzma, who is board certified in orthopedics and hand surgery, complaining of numbness and tingling in her hand. Plaintiff also indicated that "[s]he felt as though it was gradually getting worse." Plaintiff indicated to Dr. Kuzma that she had been experiencing pain since her motor vehicle accident. Dr. Kuzma diagnosed plaintiff with carpal tunnel syndrome as well as arthrosis in her right thumb. Dr. Kuzma recommended immobilizing plaintiff's thumb and wrist by placing her right hand in a splint. On 4 June 2003, Dr. Kuzma performed a carpal tunnel release on plaintiff's right hand. On 5 January 2004, Dr. Kuzma testified that plaintiff remained under his care and on one-handed work restrictions. He also opined that plaintiff may require additional surgery on her thumb in the future.

Since her 16 May 2001 motor vehicle accident, plaintiff also has experienced daily and continuous headaches. Plaintiff complained of a headache at the time of the accident to EMS workers. Plaintiff first sought treatment for her headaches on 23 October 2002 when she visited Dr. Freeman. Dr. Freeman's initial examination revealed bilateral occipital nerve tenderness along with a decreased range of motion of plaintiff's cervical spine. Over the course of his care of plaintiff, Dr. Freeman diagnosed plaintiff with "cervicogenic headache as well as occipital neuralgia as well as a previous comorbid condition of fibromyalgia and migraine headache without aura." Dr. Freeman prescribed a variety of medications and performed trigger point injections and occipital nerve blocks, but plaintiff exhibited no significant improvement. Dr. Freeman testified that further options existed for treating plaintiff's headaches, including additional trigger point injections, botulinum-toxin injections, and integrative therapies. Plaintiff did not follow up on the integrative therapies, which Dr. Freeman explained typically are not covered by insurance.

Finally, plaintiff's injuries as a result of the motor vehicle accident included several dental injuries. Plaintiff initially presented to Dr. Dennis Torney ("Dr. Torney"), a board certified endodontist, on 30 April 2002. Dr. Torney has performed root canals on several teeth on the left side of plaintiff's mouth, including multiple root canals on some of those teeth. Dr. Torney also has performed dental work and crowns on the teeth that underwent root canal therapy. These teeth all are on the left side of plaintiff's mouth—the side of her face impacted during the accident. Plaintiff has received treatment for teeth numbers 12, 13, 14, 15, 19, 23, and 24, although the Full Commission found that the repair to tooth number 19 was the re-

sult of a previous inadequate root canal, as opposed to the motor vehicle accident.

After receiving her final check from Nationwide, plaintiff filed for workers' compensation benefits on 24 June 2002. Defendants denied liability on 9 September 2002. On 30 October 2003, a hearing was held before Deputy Commissioner George T. Glenn II, and on 17 June 2004, Deputy Commissioner Glenn issued an Opinion and Award in favor of plaintiff. Defendants appealed to the Full Commission, which entered an Opinion and Award on 15 March 2006 affirming Deputy Commissioner Glenn's decision with modifications. Chairman Buck Lattimore filed a dissenting opinion. On 14 April 2006, defendants filed timely notice of appeal.

On appeal, defendants contend that: (1) the Full Commission erred in failing to properly address whether plaintiff timely reported her claim pursuant to North Carolina General Statutes, section 97-22 and whether the case should be barred for her failure to do so; (2) no competent evidence causally relates plaintiff's various alleged injuries to the accident; (3) the Full Commission failed to properly place the burden of proving disability on plaintiff and that plaintiff presented insufficient evidence of disability; and (4) the Full Commission erred in failing to award defendants a lien on all amounts accepted by plaintiff in her third-party settlement in contravention of North Carolina General Statutes, section 97-10.2.

[1] As a preliminary matter, we note that defendants' third assignment of error in the record on appeal violates the North Carolina Rules of Appellate Procedure. Pursuant to Rule 10(c),

> [e]ach assignment of error shall . . . state plainly, concisely and without argumentation the legal basis upon which error is assigned. An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references.

N.C. R. App. P. 10(c)(1) (2006). In their third assignment of error, defendants contend: "The Full Commission erred in omitting relevant stipulated documents from the transcript of the evidence prepared by the Industrial Commission." The assignment of error does not indicate to which documents defendants are referring, and this Court has held that "[a]ssignments of error which are 'broad, vague, and unspecific . . . do not comply with the North Carolina Rules of Appellate

**RICHARDSON v. MAXIM HEALTHCARE/ALLEGIS GRP.**

[188 N.C. App. 337 (2008)]

Procedure.' " *Hedingham Cmty. Ass'n v. GLH Builders, Inc.*, 178 N.C. App. 635, 641, 634 S.E.2d 224, 228 (quoting *In re Lane Company-Hickory Chair Div.*, 153 N.C. App. 119, 123, 571 S.E.2d 224, 226-27 (2002)), *disc. rev. denied*, 360 N.C. 646, 636 S.E.2d 805 (2006). Additionally, assignments of error are required to include "*clear and specific* record or transcript references," N.C. R. App. P. 10(c)(1) (2006) (emphasis added), but defendants' third assignment of error makes only the blanket reference to "Transcripts Volumes I and II." *See State v. Walters*, 357 N.C. 68, 95, 588 S.E.2d 344, 360 ("Defendant identifies the 'Entire Transcript' as the basis for the assignment of error alleging ineffective assistance of counsel, as contained in the record on appeal. As there are 3,285 transcript pages in this case, a reference to the entire transcript is not a reference to a 'particular error', nor is it 'clear and specific.' "), *cert. denied*, 540 U.S. 971, 157 L. Ed. 2d 320 (2003). In effect, defendants' third assignment of error fails to specify which documents should have been included in the transcripts and fails to provide specific record or transcript references. "It is not the role of the appellate courts . . . to create an appeal for an appellant." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401, 610 S.E.2d 360, 360 (per curiam), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005). Accordingly, defendants' third assignment of error is dismissed.

[2] In their first argument, defendants contend that the Full Commission erred in failing to properly address whether plaintiff timely reported her claim pursuant to North Carolina General Statutes, section 97-22 and whether the case should be barred for her failure to do so. We agree.

North Carolina General Statutes, section 97-22 provides that an injured employee must give written notice to his employer "immediately on the occurrence of an accident, or as soon thereafter as practicable . . .; but no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident . . . ." N.C. Gen. Stat. § 97-22 (2001). In the instant case, it is undisputed that plaintiff did not provide written notice of the accident until she filed her workers' compensation claim on 24 June 2002, over one year after her accident on 16 May 2001.

An employee is excused from the thirty-day notice requirement, however, if the employee has a "reasonable excuse . . . for not giving such notice and . . . the employer has not been prejudiced thereby." *Id.* As this Court recently noted,

included on the list of reasonable excuses would be, for example, a belief that one's employer is already cognizant of the accident or where the employee does not reasonably know of the nature, seriousness, or probable compensable character of his injury and delays notification only until he reasonably knows.

*Chavis v. TLC Home Health Care*, 172 N.C. App. 366, 377, 616 S.E.2d 403, 412 (2005) (internal quotation marks and alterations omitted) (quoting *Jones v. Lowe's Cos., Inc.*, 103 N.C. App. 73, 75, 404 S.E.2d 165, 166 (1991)), *appeal dismissed*, 360 N.C. 288, 627 S.E.2d 464 (2006). "The burden is on the employee to show a 'reasonable excuse.' " *Id.* (citing *Jones*, 103 N.C. App. at 75, 404 S.E.2d at 166).

Here, plaintiff telephoned her supervisor within thirty minutes after the accident and reported the motor vehicle accident to him. Indeed, defendants concede that they had actual knowledge of the accident on the day it happened. Although the evidence demonstrates and the Full Commission found that defendant had actual knowledge of plaintiff's accident, the Full Commission failed to make any finding that plaintiff provided a reasonable excuse for her failure to timely provide written notice of her accident. As this Court has noted, "[w]hile the Industrial Commission is not required to make specific findings of fact on every issue raised by the evidence, it is required to make findings on crucial facts upon which the right to compensation depends." *Watts v. Borg Warner Auto., Inc.*, 171 N.C. App. 1, 5, 613 S.E.2d 715, 719, *aff'd*, 360 N.C. 169, 622 S.E.2d 492 (2005) (per curiam). The determination whether or not there is a "reasonable excuse" for plaintiff's failure to file in writing is crucial. Although "[a]ctual notice by the employer has been previously held by this Court to be a reasonable excuse for not giving written notice within thirty days," *Chavis*, 172 N.C. App. at 378, 616 S.E.2d at 413, we must remand this case to the Full Commission for specific findings with respect to whether plaintiff satisfied her burden of providing a reasonable excuse for not providing defendant-employer with written notice of her accident within thirty days of its occurrence.

Additionally, the inquiry pursuant to section 97-22 does not conclude with a finding of "reasonable excuse." "Section 97-22 . . . also requires that the [F]ull Commission be satisfied that the employer has not been prejudiced by the delay in written notification[,] . . . [and] [t]he burden is on the employer to show prejudice." *Id.*

Here, the Full Commission found that "[i]n light of . . . defendants' actual notice of . . . plaintiff's accident in May 2001, . . . defendants

were not prejudiced by her failure to immediately file a written notice." However, the mere existence of actual notice, without more, cannot satisfy the statutorily required finding with respect to "prejudice," as the issue of "prejudice" pursuant to section 97-22 must be evaluated in relation to the purpose of the notice requirement:

> The purpose of the notice-of-injury requirement is two-fold. It allows the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury, and it facilitates the earliest possible investigation of the circumstances surrounding the injury.

*Booker v. Duke Med. Ctr.*, 297 N.C. 458, 481, 256 S.E.2d 189, 204 (1979); *see also Jones*, 103 N.C. App. at 76-77, 404 S.E.2d at 167. Accordingly, we remand this case for adequate findings of fact with respect to the issue of prejudice to defendant-employer pursuant to section 97-22. *See Westbrooks v. Bowes*, 130 N.C. App. 517, 527-29, 503 S.E.2d 409, 416-17 (1998) (remanding the case to the Full Commission for specific findings on whether the employer was prejudiced pursuant to section 97-22).

[3] Next, defendants contend that no competent evidence causally relates plaintiff's various injuries to her motor vehicle accident of 16 May 2001. We agree in part and disagree in part.

When reviewing decisions of the North Carolina Industrial Commission, this Court must determine whether there is competent evidence in the record to support the Commission's findings of fact and whether those findings, in turn, justify the Commission's conclusions of law. *See Perkins v. U.S. Airways*, 177 N.C. App. 205, 210-11, 628 S.E.2d 402, 406 (2006), *disc. rev. denied*, 361 N.C. 356, 644 S.E.2d 231 (2007). With respect to causation, it is well-established that

> [e]xpert testimony that a work-related injury 'could' or 'might' have caused further injury is insufficient to prove causation when other evidence shows the testimony to be 'a guess or mere speculation.' However, when expert testimony establishes that a work-related injury 'likely' caused further injury, competent evidence exists to support a finding of causation.

*Cannon v. Goodyear Tire & Rubber Co.*, 171 N.C. App. 254, 264, 614 S.E.2d 440, 446-47 (citations omitted), *disc. rev. denied*, 360 N.C. 61, 621 S.E.2d 177 (2005).

In the instant case, plaintiff sought workers' compensation benefits for: (1) the replacement of her breast implants, (2) treatment for

headaches, (3) treatment for carpal tunnel syndrome and arthrosis in her right wrist and thumb, (4) treatment for and surgeries to her right knee, and (5) treatments and procedures performed on her teeth. We address each injury separately in the above listed order.

Pursuant to our Workers' Compensation Act, "[i]njury shall include breakage or damage to eyeglasses, hearing aids, dentures, or other prosthetic devices which function as part of the body." N.C. Gen. Stat. § 97-2(6) (2001). Although this Court has not addressed the issue of compensability of damage to breast implants, we have affirmed workers' compensation awards for cosmetic surgery. *See, e.g., Ray v. Pet Parlor*, 169 N.C. App. 236, 609 S.E.2d 256 (2005). We believe that the weight of authority supports a determination that breast implants satisfy the statutory requirement as a compensable prosthetic device that functions as part of the body. *See* N.C. Gen. Stat. § 97-2(6) (2001); *see, e.g., Wal-Mart Stores, Inc. v. VanWagner*, 990 S.W.2d 522 (Ark. 1999) (finding that substantial evidence supported the Workers' Compensation Commission's decision that the employee suffered a compensable injury to her right breast implant in the course of her employment); *In re Smith*, 34 P.3d 696 (Or. Ct. App. 2001) (affirming an order of the Workers' Compensation Board that concluded that the employee had suffered a compensable injury when an on-the-job accident caused one of her saline breast implants to collapse); *see also Cowen v. Wal-Mart*, 93 P.3d 420, 424 (Alaska 2004) (injury to the employee's breast implant was presumptively compensable).

Following her motor vehicle accident on 16 May 2001, plaintiff noted that her right breast was smaller than it had been prior to the accident. Plaintiff also noted rippling in her left breast. On 31 May 2001, plaintiff presented to Dr. Bowers, a board certified specialist in plastic surgery, and expressed concerns that her breast implants had ruptured. Subsequently, on 7 June 2001, Dr. Bowers removed and replaced plaintiff's original breast implants.

During his deposition, Dr. Bowers was presented with a hypothetical scenario that echoed plaintiff's description of the accident and her injuries. In response, Dr. Bowers opined "that the accident more than likely caused the leak" in the right breast implant and that even if the accident did not directly cause the leak, the trauma "most definitely" could have accelerated or aggravated such a leak. Dr. Bowers, however, noted that the left breast implant had not ruptured, and he could not state with any certainty that the rippling evident in

the left breast was a result of the motor vehicle accident, as opposed to an underfilling of the implant.

[DEFENSE COUNSEL]: And so am I also correct that we must come to the conclusion, then, that the rippling [in the left breast] was due to underinflation, or underfilling?

[DR. BOWERS]: Right.

[DEFENSE COUNSEL]: Okay. So as far as the left one, your— would it be your opinion that the left one was not ruptured by this accident? It wasn't ruptured at all, correct?

[DR. BOWERS]: It wasn't—it did not appear to me that it was ruptured at all.

[DEFENSE COUNSEL]: Okay. *And I take it that you cannot state more than 50 percent that the rippling was due to the accident as opposed to due to underfilling?*

[DR. BOWERS]: *Right. That's correct.*

(Emphasis added). Notwithstanding the Full Commission's finding that "[t]he damage to plaintiff's breast *implants* were [sic] caused or aggravated by the accident" (emphasis added), Dr. Bowers consistently distinguished between the two breast implants.

[PLAINTIFF'S COUNSEL]: Okay. And now let me go back and review your testimony regarding the left versus the right breast. And I guess what I'm trying to figure out is, are you giving two different opinions, left versus right, or is your opinion the same for both the left and right concerning whether the trauma either caused or aggravated—

[DR. BOWERS]: Well, after—after the surgery I think the left— *the left implant was not affected by the—by the injury* because the left implant, I didn't see any evidence of a leak in it. The right implant, I think, is the one where I think it potentially was damaged by the—by the accident. Or there was some sort of damage to the right impact [sic] such that it had been affected in a way that the left implant had not been. And I think what I was seeing with the left implant was simply that there was just less saline than the 475 cc's.

(Emphasis added).

The Full Commission found that replacement of the left breast implant was necessary "because the replacements would have to be symmetrical and evenly matched. Replacement of one implant required replacement of both." Dr. Bowers, however, never testified to this effect. Instead, he stated unequivocally that the rippling in the left breast most likely was due to the original implant's being underfilled and that the rippling was not caused or aggravated by the accident. Accordingly, we hold that the Full Commission correctly ruled with respect to the replacement of plaintiff's right breast implant, but erred in concluding that "plaintiff sustained compensable injuries to her . . . *bilateral* breast implants." (Emphasis added). Therefore, plaintiff is entitled only to compensation for replacement of the right breast implant, and we remand to the Full Commission for a determination as to the appropriate amount of compensation for such replacement.

We next review the Full Commission's ruling that plaintiff was entitled to workers' compensation benefits for her headaches. During her motor vehicle accident, plaintiff sustained an impact to her head, as evidenced in the EMS report as well as the emergency room records. Dr. Freeman, plaintiff's treating physician for her headaches, testified as to the cause of plaintiff's headaches. Defendants assert on appeal that "Dr. Freeman's opinions changed throughout the deposition" and that "[h]is opinions are indecisive at best." We disagree.

To the extent defendants contend Dr. Freeman was not a credible witness, we decline to rule on that issue. *See Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965) ("The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony."). Furthermore, defendants misconstrue Dr. Freeman's testimony, which appears consistent with respect to plaintiff's headaches. During his deposition, Dr. Freeman opined:

> It would be my opinion that this person, who did not previously suffer from daily head or neck pain prior to the accident, did suffer the chronic daily head and neck pain as reported to me as a consequence of the motor vehicle accident.

Dr. Freeman clarified that plaintiff's fibromyalgia diagnosis did not alter his conclusion, stating "that without a history of documented fibromyalgia, the accident caused the pain the patient states," and "[i]f she had fibromyalgia previously, then . . . the accident exacerbated an underlying condition." Dr. Freeman explained that the only

way he would be unable to state with any certainty that the accident caused the headaches or aggravated an underlying condition would be "[i]f the patient had an extended period of pain-free, say, beginning a week or two after the initial injury." However, Dr. Freeman testified that "[f]rom the very beginning the patient has stated she's experienced a daily headache since the time of her accident." Accordingly, the Full Commission did not err in accepting Dr. Freeman's testimony and ruling that plaintiff's headaches constituted a compensable injury.

Next, plaintiff sought and obtained compensation for treatment for carpal tunnel syndrome in her right wrist and arthrosis in her right thumb. Once again, defendants effectively request this Court to re-weigh the evidence presented before the Full Commission. However, "[t]his Court does not re-weigh evidence or assess credibility of witnesses." *Sharpe v. Rex Healthcare*, 179 N.C. App. 365, 370, 633 S.E.2d 702, 705 (2006).

Dr. Dalldorf testified that plaintiff's right wrist and thumb pain was not related to the motor vehicle accident. Dr. Dalldorf further explained that he was "not even convinced she had carpal tunnel syndrome." Defendants contend that the Full Commission improperly disregarded this testimony in favor of that of Dr. Kuzma. Dr. Kuzma opined that plaintiff's motor vehicle accident, as described to him in a hypothetical question during his deposition, either caused or at least aggravated or accelerated plaintiff's carpal tunnel syndrome and arthrosis. Although plaintiff did not seek treatment for carpal tunnel syndrome symptoms for more than a year after the accident, Dr. Kuzma explained that "[m]ost carpel tunnel syndromes are going to take a period of time to develop. . . . Depending, again, on the trauma, the direction of trauma, it may take a longer period of time for it to actually show up." As this Court has held, "[t]he Commission may weigh the evidence and believe all, none or some of the evidence." *Hawley v. Wayne Dale Constr.*, 146 N.C. App. 423, 428, 552 S.E.2d 269, 272, *disc. rev. denied*, 355 N.C. 211, 558 S.E.2d 868 (2001). It is not for this Court to evaluate the comparative weight of Dr. Dalldorf's and Dr. Kuzma's testimony. Competent evidence supports the Full Commission's finding that the treatment for plaintiff's right hand and wrist was the result of her motor vehicle accident, and accordingly, this portion of defendants' assignment of error is overruled.

Defendants also contest the Full Commission's findings and conclusions with respect to plaintiff's right knee. Defendants note that plaintiff did not report complaints of knee pain in the first several

weeks following the accident. Defendants further argue that "Dr. Dalldorf's theories as to causation stemmed from his hypothesis that plaintiff's knee hit the dashboard during the accident—a fact unsubstantiated by competent evidence."

Plaintiff testified that she felt her knee "hit something because it was—it had started swelling." Plaintiff also testified that her knee began swelling within a couple of hours after the accident. Defendants cross-examined plaintiff about, *inter alia*, her knee and her failure to report it to physicians at the emergency room. As there is nothing in the record to indicate that plaintiff's deposition testimony was incompetent and defendants have presented no argument to this effect, we agree that the basis for Dr. Dalldorf's theories as to causation was supported by competent evidence, as opposed to mere speculation or conjecture. *See Hatcher v. Daniel Int'l Corp.*, 153 N.C. App. 776, 780, 571 S.E.2d 20, 23 (2002).

Dr. Dalldorf testified that although plaintiff had chondromalacia patella prior to the motor vehicle accident, plaintiff's motor vehicle accident aggravated her pre-existing condition, and she would not have needed the three surgeries but for the motor vehicle accident. Specifically, Dr. Dalldorf testified, "[M]y opinion is that if she hadn't been in the accident, she wouldn't have needed the subsequent surgeries. So I feel that the accident caused her to need these additional operations." Accordingly, we hold that the Full Commission did not err in finding plaintiff's right knee injuries and surgeries to be compensable under our Workers' Compensation Act.

[4] Defendants next contend that the Full Commission's Finding of Fact number 24—relating to the compensability of treatment performed on plaintiff's teeth—was not supported by competent evidence. Defendants list this assignment of error as one of seventeen assignments of error supporting the second question presented in their brief. However, defendants make no argument in their brief relating to this assignment of error or the Full Commission's findings with respect to plaintiff's teeth. "Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C. R. App. P. 28(b)(6) (2006).

[5] In their next argument, defendants contend that the Full Commission erred in concluding that plaintiff carried her burden of proving disability. We disagree.

" 'Disability,' within the North Carolina Workers' Compensation Act, 'means incapacity because of injury to earn the wages which the

employee was receiving at the time of injury in the same or any other employment.' " *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 493 (2005) (quoting N.C. Gen. Stat. § 97-2(9)). The burden of proving the existence and extent of a disability lies with the employee seeking compensation. *See id.* (citing *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986)). In order for a plaintiff to establish a claim for either temporary or permanent disability under the Workers' Compensation Act,

> the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). This Court has explained that

> [t]he employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).

In the case *sub judice*, the Full Commission properly found that plaintiff satisfied her burden of proving her disability as a result of her work-related injuries. Plaintiff's motor vehicle accident occurred on 16 May 2001, and plaintiff's family physician wrote her out of work from 17 May 2001 to 6 June 2001. Dr. Bowers, plaintiff's breast implant surgeon, wrote plaintiff out of work from 7 June 2001 to 24 July 2001. After injecting plaintiff's right knee, Dr. Dalldorf restricted plaintiff from working from 9 July 2001 through 6 August 2001. Plaintiff attempted to return to work on 7 August 2001, but became

disabled once again after knee surgery on 9 October 2001. After this first knee surgery, plaintiff worked one day in October 2001, four days in November 2001, one day in January 2002, and two days in February 2002. Plaintiff did not earn wages from this work, however, as defendants used plaintiff's wages to pay her health insurance premiums. Plaintiff worked and earned wages on two occasions in June 2002 prior to her final period of ongoing disability, which began on 25 June 2002 with a second knee surgery and continued until the hearing on this matter in October 2003. However, plaintiff was able to work these two days only because "sitter jobs" were available and offered to her. Other than these two days, defendant-employer did not make such light-duty work available to plaintiff. Following plaintiff's June 2002 knee surgery, Dr. Dalldorf explained that plaintiff would have had difficulty performing her regular job until at least February 2003. By March 2003, however, plaintiff was placed on one-handed work restrictions by Dr. Kuzma for her carpal tunnel syndrome and arthrosis, with such restrictions scheduled to continue until Dr. Kuzma's deposition in January 2004.

Plaintiff satisfied her initial burden of proving disability under the Workers' Compensation Act. Although plaintiff returned to work on a few occasions during the time period at issue, such intermittent and infrequent work days do not constitute a successful trial return to work. Pursuant to North Carolina General Statutes, section 97-32.1,

an employee may attempt a trial return to work for a period not to exceed nine months. During a trial return to work period, the employee shall be paid any compensation which may be owed for partial disability pursuant to [section] 97-30. *If the trial return to work is unsuccessful, the employee's right to continuing compensation under [section] 97-29 shall be unimpaired* unless terminated or suspended thereafter pursuant to the provisions of this Article.

N.C. Gen. Stat. § 97-32.1 (2001) (emphasis added).

As plaintiff carried her burden of proving disability, the burden then shifted to defendants to disprove her claim. Our Supreme Court has explained that

[i]f an injured employee establishes a compensable injury, the burden shifts to the employer to rebut the employee's evidence. As to the injured employee's ability to work, this burden requires the employer to come forward with evidence to show not only

that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations.

*Johnson v. S. Tire Sales & Serv.*, 358 N.C. 701, 708, 599 S.E.2d 508, 513 (2004) (internal quotation marks and citations omitted).

In the instant case, the Full Commission found that between October 2001 and May 2002, plaintiff testified that she regularly contacted defendant-employer seeking light-duty work, but defendant-employer rarely offered her the modified work that she was physically capable of performing based upon her restrictions. The Full Commission also found that while the accounts manager for defendant-employer testified that plaintiff had been offered light-duty assignments, the accounts manager did not know the dates or nature of such job offers, and he admitted that defendant-employer did not keep records of such offers. Because of his lack of personal knowledge, his testimony was found not to be credible. As " 'findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence,' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)), we hold that defendants failed to carry their burden of proving that plaintiff was capable of obtaining suitable employment. Defendants, therefore, failed to rebut the ongoing presumption of disability, and accordingly, this assignment of error is overruled.

[6] In their final argument, defendants contend that the Full Commission erred in failing to award defendants a lien on all amounts accepted by plaintiff in her third-party settlement with Nationwide. We agree.

As provided in section 97-10.2(b), an injured employee has the exclusive right to enforce the liability of a third party within the first twelve months following the injury. *See* N.C. Gen. Stat. § 97-10.2(b) (2001). Pursuant to subsection (h), "[i]n any proceeding against or settlement with the third party, every party to the claim for compensation *shall have a lien* to the extent of his interest . . . upon any payment made by the third party by reason of such injury or death." N.C. Gen. Stat. § 97-10.2(h) (2001) (emphasis added). Although this subsection provides that an "employee . . . shall [not] make any settlement with or accept any payment from the third party without the written consent of the [employer]," the statute further provides that employer consent to a third-party settlement is not required "[i]f

either party follows the provisions of subsection (j) of this section." N.C. Gen. Stat. § 97-10.2(h) (2001). Pursuant to subsection (j),

> [n]otwithstanding any other subsection in this section, in the event that a judgment is obtained by the employee in an action against a third party, or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge of the county in which the cause of action arose, where the injured employee resides or the presiding judge before whom the cause of action is pending, to determine the subrogation amount. After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer, the judge shall determine, in his discretion, the amount, if any, of the employer's lien, whether based on accrued or prospective workers' compensation benefits, and the amount of cost of the third-party litigation to be shared between the employee and employer.

N.C. Gen. Stat. § 97-10.2(j) (2001). Therefore, either party may apply to the superior court for a determination of the subrogation amount, regardless of whether both parties consented to the third-party settlement. Although "cognizant of the potential for plaintiff to receive a double recovery via the operation of [section] 97-10.2(j)[,] . . . we [previously have] determined that the statute contemplated and allowed for such a recovery if justified by the equities of the case." *Wiggins v. Bushranger Fence Co.*, 126 N.C. App. 74, 77-78, 483 S.E.2d 450, 452, *disc. rev. denied*, 346 N.C. 556, 488 S.E.2d 825 (1997).

In the case *sub judice*, following her 16 May 2001 motor vehicle accident, plaintiff filed a claim against Nationwide, the carrier of the uninsured motorist coverage of the vehicle she had been driving. As the Full Commission properly found, "the settled claim filed by . . . plaintiff against Nationwide is, in fact, a third-party claim." The Full Commission, however, concluded that "defendants shall be entitled to a credit, if any, *as duly awarded by a superior court* pursuant to [North Carolina General Statutes, section] 97-10.2." (Emphasis added).

Contrary to the Full Commission's conclusion, defendants' credit does not depend upon an award by the superior court, since section 97-10.2(h) clarifies that the lien is automatic. *See* N.C. Gen. Stat. § 97-10.2(h) (2001) (providing that "every party to the claim for compensation *shall have a lien* to the extent of his interest . . . upon any

payment made by the third party" (emphasis added)). Instead, plaintiff may apply to the superior court for a determination of the lien amount pursuant to section 97-10.2(j), which this Court has described "as permitting the superior court to *adjust* the amount of a subrogation lien." *Ales v. T.A. Loving Co.*, 163 N.C. App. 350, 353, 593 S.E.2d 453, 455 (2004) (emphasis added). Unless and until plaintiff applies to the superior court for a determination of the subrogation amount, defendants are entitled to a lien on all corresponding uninsured motorist benefits received by plaintiff, less the portion expended for the cost of replacing plaintiff's left breast implant. *See Tise v. Yates Constr. Co., Inc.*, 345 N.C. 456, 459, 480 S.E.2d 677, 679 (1997) (holding that damages awarded against a third party are to be reduced only "by the amount which the employer would otherwise be entitled to receive therefrom by way of subrogation"). Accordingly, we reverse this portion of the Full Commission's Opinion and Award and remand to the Full Commission for findings not inconsistent with this opinion.

Affirmed in part; Reversed in part; and Remanded.

Judge WYNN dissents in part and concurs in the results only in part in a separate opinion.

Judge STEELMAN concurs.

WYNN, Judge, dissenting in part and concurring in the results only in part.

Because I find that the majority reweighs the evidence in this case and improperly substitutes its judgment for that of the Full Commission, I respectfully dissent.

I note at the outset that this Court's review of an Opinion and Award of the Full Commission is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Most significantly, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains *any* evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (emphasis added) (quoting *Anderson v. Lincoln Constr. Co.*, 265

N.C. 431, 434, 144 S.E.2d 272, 274 (1965)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999).

Thus, if there is any evidence at all, taken in the light most favorable to the non-moving party, the finding of fact made by the Full Commission stands, even if there is substantial evidence supporting the opposing position. *Id.* Findings may therefore be set aside on appeal only "where there is a *complete lack* of competent evidence to support them." *Rhodes v. Price Bros.*, 175 N.C. App. 219, 221, 622 S.E.2d 710, 712 (2005) (emphasis added and quotation omitted).

I.

First, I disagree with the majority's conclusion that the Full Commission erred in failing to address whether Ms. Richardson timely reported her worker's compensation claim pursuant to North Carolina General Statute § 97-22.

The majority cites to *Booker v. Duke Medical Center* for the proposition that the Full Commission should make findings as to an employer's ability to "provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury" and to conduct "the earliest possible investigation of the circumstances surrounding the injury." 297 N.C. 458, 481, 256 S.E.2d 189, 204 (1979) (citation omitted). However, I note that the Supreme Court also held in *Booker* that the defendant-employer had waived the issue of notice by failing to raise it before the Full Commission, and that the facts indicated that the defendant-employer did have actual notice of the employee's work-related illness. *Id.* at 482, 256 S.E.2d at 204. Thus, I find the language from *Booker* cited by the majority to be dicta from the Supreme Court, offered only in the context of discussing "[t]he purpose of the notice-of-injury requirement," *id.* at 481, 256 S.E.2d at 204, and not stated as a directive to the trial court as to what specific findings must be made.

Moreover, in *Jones v. Lowe's Companies*, this Court referred to the "purpose of the statutory notice requirement" when explaining how the Industrial Commission should determine whether prejudice exists, not as a requirement as to what findings are necessary for the Full Commission to make. 103 N.C. App. 73, 76-77, 404 S.E.2d 165, 167 (1991). Indeed, we vacated and remanded the Industrial Commission's Opinion and Award in that case, finding that the record showed that the employee did have a reasonable excuse for lack of written notice so the Commission had to make a determination as to preju-

dice. *Id.* at 76, 404 S.E.2d at 167. Significantly, however, we held that "the burden is on Employer to show prejudice." *Id.*

Likewise, the Supreme Court explicitly stated in *Booker* its finding that a worker's compensation claim is barred "if the employer is not notified within 30 days of the date the claimant is informed of the diagnosis unless reasonable excuse is made *to the satisfaction of the Industrial Commission* for not giving such notice and *the Commission is satisfied that the employer has not been prejudiced thereby.*" 297 N.C. at 481, 256 S.E.2d at 203 (emphasis added and quotation omitted). The holdings from these cases make clear that the statute does not require specific findings as to prejudice, only that the Commission find to its "satisfaction" that the employer failed to show prejudice.

In the instant case, the Full Commission made the explicit finding that:

> The plaintiff notified the defendant-employer about her accident on May 16, 2001, within thirty minutes. Her notice was timely. She gave written notice, by filing a Form 18 in June 2002. In light of the defendants' actual notice of the plaintiff's accident in May 2001, *the defendants were not prejudiced by her failure to immediately file a written notice.*

(Emphasis added).[2] I find this to be sufficient under the Supreme Court's language in *Booker* that ·a claim will not be barred if "the Commission is satisfied that the employer has not been prejudiced [by the failure to give written notice]." *Id.*

Additionally, I note that we held in *Chavis v. TLC Home Health Care* that actual knowledge was a reasonable excuse for failure to give written notice:

---

2. I note, too, that this finding is corroborated by the following statement by the Deputy Commissioner who heard this case, with respect to the issue of notice:

> Here, the testimony is that [Maxim Healthcare] had actual notice. . . . Now, they did nothing. Again, we had somebody who went to the hospital. At a very minimum, they knew at that point that they had hospital bills they needed to pay. . . . Now, . . . each side is saying that neither did what they should have done. Be that as it may, there was enough notice given here that somebody on [Maxim Healthcare's] part should have done something. They didn't. So, no, [Ms. Richardson] didn't do everything she should have done, but she did enough. . . . And again, [Maxim Healthcare] knew of the injury by accident on the date of the accident. If they didn't do any investigation to determine what—and the extent of her injuries, it's a little late for them to complain now or a year or so later, after she filed an 18, . . ., when they had an opportunity, because of their notes, to investigate the claim, but they did not.

RICHARDSON v. MAXIM HEALTHCARE/ALLEGIS GRP.

[188 N.C. App. 337 (2008)]

Here, the full Commission found that [the defendant-employer] had actual notice of [the plaintiff-employee's] accident on the day it occurred. The full Commission found also that [the defendant-employer] "offered no evidence that might tend to show that they were prejudiced" by any delay in written notification. Although [the defendant-employer] now argues it was prejudiced because it was unable to direct [the plaintiff- employee's] medical treatment, it did not argue this to the full Commission. Also, [the defendant-employer] fails to assert how it was prejudiced by [the plaintiff-employee] seeking medical treatment from her own doctor. We find competent evidence to support the full Commission's finding that [the defendant-employer] had actual knowledge of [the plaintiff-employee's] injury and was not prejudiced by any delay in written notification.

172 N.C. App. 366, 378, 616 S.E.2d 403, 413 (2005) (citation omitted), *appeal dismissed*, 360 N.C. 288, 627 S.E.2d 464 (2006). This holding is binding on other panels of this Court and should be followed, given that the Full Commission's findings amounted to the conclusion that Ms. Richardson had offered a reasonable excuse for the delay in her written notice. *See In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

Accordingly, I would affirm the Full Commission's Opinion and Award as to the issues of notice and prejudice.

II.

I agree with the majority's conclusion to affirm the Full Commission's award of compensation for Ms. Richardson's treatment for headaches, carpal tunnel syndrome in her right wrist and thumb, treatment and surgeries on her right knee, and treatment and procedures on her teeth. However, I would likewise affirm the Full Commission's award of compensation for the replacement of both of Ms. Richardson's breast implants, rather than only the right breast implant.

As previously noted, this Court's review of a Full Commission Opinion and Award is strictly limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of

law." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. We are therefore precluded from reweighing the evidence and instead review the record only to verify that it "contains any evidence tending to support the finding." *Adams*, 349 N.C. at 681, 509 S.E.2d at 414.

Additionally, under our legal framework, "[t]he objective of any proceeding to rectify a wrongful injury resulting in loss is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money." *Phillips v. Chesson*, 231 N.C. 566, 571, 58 S.E.2d 343, 347 (1950). Put more simply, "[t]he goal is to make the plaintiff whole." *Shaver v. N.C. Monroe Constr. Co.*, 63 N.C. App. 605, 615, 306 S.E.2d 519, 526 (1983), *disc. review denied*, 310 N.C. 154, 311 S.E.2d 294 (1984); *see also Watson v. Dixon*, 352 N.C. 343, 347, 532 S.E.2d 175, 177-78 (2000) (citing *Bowen v. Fidelity Bank*, 209 N.C. 140, 144, 183 S.E. 266, 268 (1936) ("The purpose of the law is to place the party as near as may be in the condition which he would have occupied had he not suffered the injury complained of.")). Workers' compensation cases are a subset of these compensatory damages cases; they seek to compensate the employee for medical expenses and the loss of earning capacity while also limiting the liability of employers. *See Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 190, 345 S.E.2d 374, 381 (1986). Thus, although an employee may not recover traditional monetary compensatory damages, the Workers' Compensation Act nevertheless seeks to make an injured employee whole by providing for her medical treatment to restore her, to the extent possible, to the same condition she was in prior to a compensable accident and injury.

This is true even when the injury merely accelerated or aggravated an employee's pre-existing condition. *See Davis v. Columbus County Schs.*, 175 N.C. App. 95, 101, 622 S.E.2d 671, 676 (2005) (citing *Anderson v. Northwestern Motor Co.*, 233 N.C. 372, 374, 64 S.E.2d 265, 267 (1951)). "In such a case, where an injury has aggravated an existing condition and thus proximately caused the incapacity, the relative contributions of the accident and the pre-existing condition will not be weighed." *Wilder v. Barbour Boat Works*, 84 N.C. App. 188, 196, 352 S.E.2d 690, 694 (1987) (citation omitted).

In the instant case, the relevant finding by the Full Commission states:

10. *The damage to plaintiff's breast implants were caused or aggravated by the accident.* Dr. Bowers testified that the accident caused the leak he found in the plaintiff's right

breast implant. He was not certain whether the accident caused the rippling in her left breast implant or whether the rippling was from normal wear and tear. However, Dr. Bowers noted that, even if there was deterioration of the implants pre-accident, the trauma to the plaintiff's chest would "most definitely" have accelerated or aggravated the process. *Dr. Bowers replaced both implants, even though only one had ruptured, because the replacements would have to be symmetrical and evenly matched. Replacement of one implant required replacement of both.*

(Emphasis added). In his deposition, Dr. Bowers stated that he did not believe the left implant had been ruptured, but "it did have that rippling around the periphery." Although Dr. Bowers did not have the medical records from Ms. Richardson's first implant surgery, he made the assumption that she had had 475 cc implants that were underfilled, which could lead to the rippling effect she had noticed—but he also stated that he was not certain as to the exact amount of fluid Ms. Richardson had in her first implants. Dr. Bowers also confirmed that the right breast implant did appear to be ruptured based on the amount of fluid it was missing, such that there was a lot less fluid in the right implant than in the left implant.

Ms. Richardson testified that she had not had any problems with her breast implants prior to the accident and had been satisfied with the result of that earlier surgery. She further stated that she believed her implants were affected by the accident because "they had decreased. You could see rippling that you could not see before." Additionally, her bra size had changed. Ms. Richardson recounted that she had her breast implants replaced with implants of the same size, because they had decreased in size after the accident and she wanted "[t]o achieve the look that [she] had before the wreck."

This testimony was corroborated by the notes Dr. Bowers took following his initial consultation with Ms. Richardson, which likewise recounted that she reported a decrease in breast size and rippling in both implants following the accident. Moreover, Dr. Bowers wrote that, "[i]f these were initially 475 cc implants, then clearly they are smaller than they were." Following the surgery, Dr. Bowers recorded "[v]ery nice symmetry" and that the procedure "seems to have corrected the deficit which she noticed post car accident."

I believe this testimony and evidence supports the Full Commission's finding that replacement of both implants was neces-

sary to ensure that they would be "symmetrical and evenly matched[,]" and that "[r]eplacement of one implant required replacement of the both." Given that the right implant was ruptured and necessitated replacement, the sole means of ensuring that both implants would be symmetrical—and in the condition they were prior to Ms. Richardson's car accident—was to replace and fill both to the same saline level. The majority's holding would force any woman who suffered this type of compensable injury, including one who had undergone reconstructive surgery following a double mastectomy, to choose between a noticeably asymmetrical appearance or out-of-pocket payment for treatment necessary due only to a compensable injury. I cannot agree with such an outcome. Accordingly, I would therefore affirm the Full Commission in this regard.

III.

Next, I find that the Full Commission's Opinion and Award recognizes that Maxim Healthcare does, in fact, have a lien on Ms. Richardson's third-party settlement with Nationwide Insurance, and that it further allows for either party to apply to the Superior Court to subsequently determine the amount of that lien. This conclusion is exactly in line with the language and directive of North Carolina General Statute § 97-10.2 (2005). Accordingly, I see no error or reason to reverse and remand on this issue and would instead affirm the Full Commission.

As noted by the majority, section 97-10.2(b) gives an employee the exclusive right to enforce the liability of a third party for an injury. N.C. Gen. Stat. § 97-10.2(b). The statute further dictates that "every party to the claim for compensation *shall have a lien to the extent of his interest* . . . upon any payment made by the third party . . . and such lien may be enforced against any person receiving such funds." *Id.* § 97-10.2(h). Although the written consent of the employer is generally required before a third-party settlement is valid and enforceable, *see id.*, the statute also allows an exception for the employee to settle with the third party and then have either the employer or the employee "apply to the resident superior court judge . . . to determine the subrogation amount[.]" *Id.* §§ 97-10.2(h)(2), (j). The statute includes factors that the trial court should consider in using its discretion to determine the amount of the lien the employer should have against the employee's third-party settlement. *Id.* § 97-10.2(j).

In the instant case, the Full Commission's conclusion states:

5. Plaintiff's settled claim against Nationwide Insurance is a third-party claim and, thus, N.C. Gen. Stat. § 97-10.2 applies to provide the defendants a statutory lien.

N.C. Gen. Stat. § 97-10.2(j) provides in pertinent part:

> [I]n the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge of the county in which the cause of action arose, where the injured employee resides or the presiding judge before whom the cause of action is pending, to determine the subrogation amount.

Thus, the defendants may be entitled to a credit for plaintiff's third party recovery pursuant to N.C. Gen. Stat. § 97-10.2(j).

From its plain language, the Opinion and Award "provide[s] the defendants a statutory lien[]" against Ms. Richardson's third-party settlement with Nationwide Insurance. Nevertheless, by stating only that "the defendants *may be* entitled to a credit[,]" the Full Commission complied with the express statutory directive that it is the responsibility of a Superior Court judge—not that of the Full Commission—to determine the actual amount of the lien.

This conclusion of law fully comports with the applicable statute; the Full Commission recognized that Maxim Healthcare has an automatic statutory lien on Ms. Richardson's settlement but left the amount to be determined by a Superior Court judge upon application by either party. As such, the Full Commission has already done in its Opinion and Award what the majority would direct them to do on remand. I would therefore affirm the Full Commission.

IV.

Finally, I concur in the result only of the dismissal of Maxim Healthcare's third assignment of error. I, too, would dismiss the assignment of error contending that the Full Commission erred in "omitting relevant stipulated documents from the transcript of the evidence prepared by the Industrial Commission." Maxim Healthcare failed to present or discuss any actual argument as to this assignment of error in their brief to this Court; accordingly, under our Rules of Appellate Procedure, it must be dismissed. N.C. R. App. P. 28(b)(6). Because Maxim Healthcare essentially abandoned this assignment of error by failing to argue it, I would dispose of this assignment of error in the same manner the majority has treated Maxim Healthcare's

assignment of error concerning the Full Commission's Finding of Fact number 24, namely, to dismiss it as abandoned.