***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to either receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms with some modifications of the findings of fact, the Opinion and Award of the Deputy Commissioner.
 *********** MOTION TO DISMISS DEFENDANT'S APPEAL
Plaintiff moved for dismissal of defendant's appeal to the Full Commission on the ground that the assignments of error on the Form 44 were insufficient because the grounds for appeal are not stated with particularity and, therefore, should be deemed abandoned as required by Industrial Commission Rule 701. The Full Commission finds, based upon the issues raised on *Page 2 
appeal in this case, that the grounds for appeal were stated with enough particularity to give plaintiff notice of the errors alleged. Therefore, plaintiff's motion to dismiss the appeal is DENIED.
 *********** RULING ON ADMISSION OF DR. DONALD GETZ REPORT
The Full Commission finds that the report of Dr. Donald Getz was not made a part of the official transcript before the Full Commission. Upon inquiry by the Full Commission, defendant contends that it produced the report via e-mail, as a supplement to defendant's Contentions, and that the parties stipulated to the aforementioned report via an e-mail dated December 10, 2006, which is attached to the Transcript as Exhibit pages 187-188. Upon consideration of the aforementioned e-mail, as well as consideration of the Contentions of the parties, the Full Commission finds that the parties, in fact, stipulated to the report of Dr. Donald Getz, and it is, therefore, admitted into evidence, and added as Transcript Exhibit pages 189-190.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and after the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee/employer relationship existed between the named employee and the named employer.
3. The parties agreed to stipulate to plaintiff's average weekly wage as $292.45, with a corresponding compensation rate of $195.06.
4. The parties stipulated into evidence as Stipulated Exhibit # 1, Pre-Trial *Page 3 
Agreement, as modified and initialed by the parties.
5. The parties stipulated into evidence as Stipulated Exhibit # 2, medical records.
6. The parties stipulated into evidence as Stipulated Exhibit # 3, a packet of documents, including I.C. forms, employment records, and discovery documents.
 *********** ISSUES
Plaintiff's issues are:
 1. Whether plaintiff sustained a compensable injury by accident involving her back on January 24, 2004?
 2. If so, whether plaintiff became disabled from work as a result of her alleged injury, and for what period of time?
 3. Whether compensation benefits are due plaintiff as a result of her compensable injury?
Defendant's issues are:
 1. Whether plaintiff sustained an accident on January 24, 2004?
 2. If so, whether plaintiff sustained an injury to her back as a result of the January 24, 2004 accident, or whether plaintiff's back condition is a result of a subsequent, intervening event?
 3. If plaintiff suffered an injury to her back on January 24, 2004, what benefits, if any, is she entitled to?
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was 42 years old. She is a high school graduate, and has an Associates Degree in Microsystems Computer Technology from Craven Community College.
2. On January 24, 2004, plaintiff was an office assistant and cashier, and had been employed by defendant-employer for over two years. Part of her duties as an office assistant included performing a safe count before the beginning of her shift.
3. On Saturday, January 24, 2004, plaintiff came to work on the closing shift to perform duties as an office assistant. Plaintiff and Ms. Lynn Bolton, a co-worker, went into the office area to do the safe count. While performing the safe count plaintiff saw a cream-colored bag on the floor of the safe and reached down with her left hand to pick it up. Specifically, plaintiff testified that: " . . . when I got down, I had to, you know, bend down to it [the bag] and she [Ms. Bolton] commenced to helping me as far as like lifting, because the bag — the change . . . was in rolls." The bag was heavier than she expected, and lifting it "kind of jolted" her. Plaintiff then used her right hand for additional support, grabbed the bag with both hands, and put it down on the floor. She immediately felt a "sharp pinch-like" pain in her lower back. Plaintiff testified, "It hurt, you know, real bad because I didn't expect it to be that heavy and I didn't expect the jolt to jolt me like that." Plaintiff asked Ms. Bolton, "What in the world is in this bag?" Plaintiff discovered that the bag contained boxes of quarters, nickels, dimes, pennies and plastic bundles of one-dollar bills, and that the bag weighed in excess of 25 pounds.
4. The Full Commission finds credible plaintiff's testimony that she told Ms. Bolton she hurt herself lifting the bag. Ms. Bolton did not provide testimony in this case. Further, the Full Commission finds that plaintiff sustained a back injury in the course of bending down to *Page 5 
pick up the bag of coins, given plaintiff's credible testimony that she had to "bend down to it [the bag] and she [Ms. Bolton] commenced to helping me as far as like lifting" the bag back up, as plaintiff felt a "sharp pinch-like" pain in her lower back.
5. On the evening of January 24, 2004, plaintiff reported to Ms. Joyce Vinson, the Customer Service Manager on duty at the time, that she had hurt herself, and that her back was "killing" her. She questioned Ms. Vinson concerning why a co-worker would leave money in a bag in the manner in which it was left. Ms. Vinson did not file a work incident report and was not present at plaintiff's hearing to testify. Plaintiff's testimony that she told Joyce Vinson on January 24, 2004, the day of injury, that she injured her back lifting a bag of money out of the safe is found to be credible.
6. Plaintiff completed her shift and was not scheduled to work on the following day. On Monday, January 26, 2004, plaintiff returned to work. As she was clocking in to start work, Ms. Sandy Richardson, a scan analyst for defendant-employer, observed that plaintiff was walking slowly and in a stiff manner, and that she "had this look on her face like she was in pain." Ms. Richardson asked what was wrong and plaintiff told her she hurt her back picking up a bag of money from the floor of the safe. Ms. Richardson testified at plaintiff's hearing.
7. Mr. Reginald Norman, Grocery Manager for defendant-employer, testified that on Tuesday, January 27, 2004, he observed plaintiff "leaning up against the register like for support like she was in pain." Plaintiff told Mr. Norman that she had hurt her back lifting up a bag of money from the floor of the safe. Mr. Norman asked if he could be of assistance or provide any accommodations to her at that time. Mr. Norman did not complete a work incident report.
8. The Full Commission finds plaintiff's testimony that she injured her back at work on January 24, 2004 while lifting a bag of money from the floor of the safe to be credible. *Page 6 
9. On January 28, 2004, four (4) days after her injury from lifting the bag of money, plaintiff attempted to pick up a plastic box fan weighing approximately two to three pounds from a step while at home. At that time, she felt a sharp, stabbing pain in her low back in the same area she injured on January 24, 2004. Plaintiff sought emergency medical treatment at Craven Regional Medical Center where she complained of right-sided low back pain after lifting a fan. She was prescribed medication and told to follow up with Dr. Bounous.
10. The next day, January 29, 2004, plaintiff tried to work but was unable to perform the normal duties of her job. After being at work for a short period of time, plaintiff left due to pain.
11. Plaintiff followed up with Dr. E. Phillip Bounous, Jr. of Atlantic Internal Medicine. Dr. Bounous ordered an MRI of plaintiff's low back. The MRI was performed on February 2, 2004, and showed a right foraminal and lateral disc bulge at L3-4, a left paracentral disc protrusion, and a small annular tear at L4-5. Dr. Bounous noted that the MRI results clearly showed a bulging disc and nerve root impingement at L3-4, which clearly explained her pain, and noted that she also had disc bulging at L4-5.
12. The medical records of Dr. Bounous beginning April 5, 2004 as well as several entries thereafter, indicate that plaintiff's back pain was related to an on the job injury, but give no description of the how the injury occurred. Dr. Bounous referred plaintiff to Dr. Mark Held for specialized treatment; however, he remained her primary treating physician. Dr. Bounous wrote plaintiff out of work until he released her to return to work on May 17, 2005. Plaintiff returned to work with defendant-employer on May 25, 2005.
13. Dr. Held began treating plaintiff on March 24, 2004. He recommended that plaintiff receive epidural steroid injections in her low back and referred her to physical therapy. *Page 7 
Plaintiff attended physical therapy and received two epidural steroid injections, as recommended by Dr. Held. At plaintiff's first treatment with Dr. Held, she gave a history of lifting a fan at home and feeling like a knife had been stuck in her back. Based upon this history, Dr. Held assumed that the fan was a ceiling fan and was substantially heavier than the box fan described to him at his deposition. Dr. Held did not record in his notes any report from plaintiff concerning an injury to her back while lifting a bag of money at work until November 13, 2004.
14. The deposition testimony of Dr. Mark Held, a board certified neurosurgeon and stipulated expert in neurosurgery, was taken on August 4, 2006. Dr. Held was primarily asked to render an opinion on whether the lifting of the bag of coins at work, weighing in excess of 25 pounds, or the lifting of the two to three pound box fan at home, caused plaintiff's disabling back condition.
15. When initially asked whether the lifting of the bag of money or the lifting of the box fan caused the symptoms for which he treated plaintiff, Dr. Held testified that there is a cumulative effect to everything, and that plaintiff may have had some injury associated with lifting the bag of money, but he could not say how much the lifting of the money bag versus the lifting of the box fan ultimately contributed to her injury.
16. Upon being given a more detailed hypothetical question, and upon being asked to assume facts which the Full Commission find to be consistent with the greater weight of the competent evidence presented, as well as the reasonable inferences from the evidence, Dr. Held gave the opinion that given the set of circumstances described by plaintiff's attorney, he would be more likely to believe that it was the initial event where she was lifting the heavier bag of money stooping down or bending down to get something out of a safe that caused the injury. He further testified that lifting the bag of coins was capable of producing plaintiff's disc protrusion, *Page 8 
and that to a reasonable degree of medical certainty, lifting the bag of coins could have contributed to the conditions documented on the MRI. When asked by the defense attorney whether, given the repeated reference in her medical records of pain due to lifting the box fan, it is more likely than not to be the precipitating event of plaintiff's pain, Dr. Held testified that if plaintiff had any pain associated with lifting the bag of money, that may have just been one of the early "premonitory symptoms" that was later exacerbated by her lifting up something less substantial. Dr. Held further testified:
 "A lot of this comes down the mechanism of how she was bending and twisting, the spine is more susceptible to injury in certain positions. And bending and twisting certainly increases the susceptibility to injury, especially when you're lifting or twisting with something heavier versus something that is lighter and maybe you're not bending down quite as much."
Further, Dr. Held was of the opinion that if plaintiff had an injury that preceded the lifting of the box fan, it may have made that lifting of the box fan a much more substantial problem. It may have aggravated the situation that may have been "brewing to a significant degree." In response to questioning by defense counsel, Dr. Held could not say that lifting the box fan at home more likely than not was "the precipitating event of her [plaintiff's] pain." Dr. Held later testified, "It is hard to say, but if I had a — if I had to guess what was the precipitating event, I would say that it's the one where she was lifting the heavier object in a more compromised position." Dr. Held's testimony supports that both the bag-lifting incident and the fan-lifting incident contributed to plaintiff's ultimate back injury. Plaintiff established she had pain from lifting in both instances.
17. The word "guess" does indicate some degree of speculation, but based on the entire testimony of Dr. Held and the other evidence presented, the Full Commission finds that *Page 9 
both incidents significantly contributed to plaintiff's injury and disability, and that it is hard to tell which incident contributed more substantially.
18. The Full Commission finds, after weighing all of the opinion testimony of Dr. Held, and based on the greater weight of the competent evidence presented, that plaintiff's lifting of the heavy bag of money at work either caused or significantly contributed to plaintiff's back condition which led to her disability. Plaintiff is not required to prove that lifting the bag of money was the sole cause of her back condition and resulting disability. Although the medical records do not initially reference plaintiff's lifting of the bag of money in the history given, the evidence does establish that on each day that she worked from the time she lifted the bag of money until the time she lifted the box fan, plaintiff's co-workers observed that she appeared to be in pain, which she attributed to lifting the bag of money at work. Specifically, Mr. Norman observed the day before the fan-lifting incident that plaintiff appeared to be in pain while at work, and testified that plaintiff attributed her pain to lifting the bag of money.
19. Upon careful review of the report of Dr. Donald Getz, the Full Commission further finds that greater evidentiary weight shall be given to the testimony and medical records of Dr. Mark C. Held, inasmuch as Dr. Held was Plaintiff's treating physician, and as such, had the benefit of hands-on treatment, examination, and consultation with plaintiff. Further, the Full Commission finds that Dr. Getz either was not provided, or did not utilize, the benefit of further background and factual information setting forth the circumstances giving rise to plaintiff's January 24, 2004 bag-lifting incident, or the mechanism of injury thereof, in forming his opinions. Specifically, it appears that Dr. Getz based his opinions entirely upon a cursory review of plaintiff's medical records, without considering the testimony of either plaintiff or Dr. Held. *Page 10 
20. Based upon the greater weight of the evidence of the record, the Full Commission finds that on January 24, 2004, plaintiff sustained a compensable injury, arising out of and in the course of her employment, as a direct result of a specific traumatic incident of the work assigned. When plaintiff bent down and lifted a bag of money, which was heavier than she expected, from the floor of the office safe, and "went to put the bag on the floor," she felt a "sharp pinch like" feeling which went through her back. Plaintiff's testimony that she experienced severe pain immediately, which continued through the incident involving the lifting of the box fan, is found to be credible.
21. As a result of her compensable injury of January 24, 2004, in combination with her subsequent January 28, 2004 injury, plaintiff was written out of work by Dr. Bounous from January 30, 2004 until May 25, 2005, and is entitled to temporary total disability compensation during this period.
22. Plaintiff had a reasonable excuse for her failure to give written notice of the injury within 30 days, as defendant-employer had actual notice of the injury through the customer service manager on duty on the day the injury occurred, Joyce Vinson, and through Reginald Norman, the grocery manager, three (3) days after the injury. Because these two (2) members of defendant's management were made aware of plaintiff's injury by plaintiff personally advising each of them, separately, of her injury, defendant was not prejudiced by plaintiff's failure to provide written notice.
23. The medical treatment plaintiff has received for her injury was reasonably required to effect a cure, provide relief, or lessen her disability from her January 24, 2004 compensable low back injury, in combination with her subsequent January 28, 2004 injury. *Page 11 
24. Plaintiff has not been evaluated for any permanent partial impairment rating for her compensable low back injury, and there is insufficient evidence on whether she has reached maximum medical improvement.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury arising out of and in the course of her employment with defendant employer as a direct result of a specific traumatic incident of the work assigned to her by defendant-employer on January 24, 2004, when she lifted a bag of money from the floor of the office safe which was heavier than expected, and then experienced immediate low back pain which persisted through the time of a second incident at home, which likely further contributed to the worsening of her condition. N.C. Gen. Stat. § 97-2(6).
2. "[W]here the right to recover is based on injury by accident, the employment need not be the sole causative force to render an injury compensable." Hansel v. Sherman Textiles, 304 N.C. 44, 52,283 S.E.2d 101,106 (1981). At the time of her second injury from lifting the box fan, plaintiff was already having difficulty in performing her work duties, but she had not sought medical treatment. The second injury, which occurred at home, caused her to seek immediate medical treatment. The issue presented is whether the work related injury on January 24, 2004 caused or significantly contributed to her need for medical treatment and disability, or whether the second injury was the sole cause of her disabling condition. The greater weight of the evidence establishes that plaintiff's work injury contributed to and was a causal factor in plaintiff's disabling back condition. Therefore plaintiff's resulting disability is compensable. *Page 12 Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Kashino v.Carolina Veterinary Specialists, Inc., ___ N.C. App. ___, 650 S.E.2d 839
(2007); Smith v. Champion Intern., 134 N.C. App. 180, 517 S.E.2d 164
(1999).
3. In order for plaintiff to prove causation, she must proffer competent evidence from which a qualified medical expert can conclude that there is a causal connection between the January 24, 2004 bag-lifting accident and the documented back injury for which plaintiff seeks compensation and benefits. Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000). Where medical expert opinion is based solely on speculation and conjecture, such evidence is incompetent to establish the requisite causal link. Id. In this case, plaintiff met her burden of proving causation by proffering the testimony of Dr. Mark C. Held, who opined that plaintiff's lifting of the heavier bag of money versus the lifting of the lighter box fan was a causative factor in producing plaintiff's documented back injury and resulting pain. Dr. Held's testimony is competent evidence to support the Full Commission's finding that on January 24, 2004, plaintiff sustained a compensable injury arising out of and in the course of plaintiff's employment as a direct result of a specific traumatic incident, to wit: the bending and lifting of the bag of money from the floor of the safe.
4. As a direct and proximate consequence of plaintiff's compensable injury, plaintiff was incapable of working and is entitled to temporary total disability compensation at a rate of $195.06 per week during the period from January 29, 2004 until May 25, 2005, when Plaintiff returned to work with defendant-employer. N.C. Gen. Stat. § 97-29.
5. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment, and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliardv. *Page 13 Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485
(2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). Plaintiff has met her burden of showing disability through medical evidence that Dr. Bounous took her out of work from January 29, 2004 until May 17, 2005, and that she returned to work for defendant-employer on May 25, 2005. Id.; See also, Bailey v. WesternStaff Services, 151 N.C. App. 356, 566 S.E.2d 509 (2002); Peoples v.Cone Mill Corp., 316 N.C. App. 426, 342 S.E.2d 798 (1986).
6. Plaintiff is entitled to have defendant provide all medical treatment necessitated by her January 24, 2004 compensable injury, including the medical treatment recommended by and provided by Dr. Bounous and Dr. Held. The evaluations and treatments plaintiff has received have been reasonably required to effect a cure, provide relief, or lessen her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
7. Although apportionment of compensation is appropriate where the disease or injury "causes a worker to be partially physically disabled, and other infirmities, acting independently of and not aggravated by [the occupational disease], also cause the worker to be partially disabled . . . ," apportionment is not always appropriate. Bolick v. ABFFreight Systems, *Page 14 Inc., ___ N.C. App. ___, 654 S.E.2d 793 (2008), quoting, Rutledge v.Tultex Corp., 308 N.C. 85, 100, 301 S.E.2d 359, 369 (1983). " . . . [W]here there is no evidence attributing a percentage of the plaintiff's total incapacity to her compensable injury and to the non-compensable condition, . . . or where the evidence before the Commission is such that any attempted apportionment of the disability between work-related causes would be merely speculative, apportionment is not proper."Id., quoting, Errante v. Cumberland County Solid Waste Management,106 N.C. App. 114, 119-120, 415 S.E.2d 583, 586 (1992); Harrell v. HarrietHenderson Yarns, 314 N.C. 566, 575, 336 S.E.2d 47, 52 (1985). In this case, the Full Commission concludes that apportionment of plaintiff's compensation between her January 24, 2004 work-related injury and her January 28, 2004 non-work-related injury is not proper, given the testimony of Dr. Held, which was the only medical causation testimony taken, stating that he does not know "how much each specific factor contributed to her overall clinical situation."
5. Plaintiff has not been determined to have reached maximum medical improvement, and has not been given a permanent partial disability rating (if any) for her compensable low back injury. N.C. Gen. Stat. §§ 97-25 and 97-31.
6. To the extent any issue has been raised by defendant concerning plaintiff's failure to give timely written notice of her workers' compensation claim to her employer, the Full Commission concludes that plaintiff had a reasonable excuse for her failure to give written notice of the injury within 30 days, as defendant had actual notice through supervisory personnel. Based upon the provision by plaintiff of actual notice to her employer, and since defendant has not presented any credible evidence that it was prejudiced by plaintiff's failure to provide timely written notice of her workers' compensation claim, the Full Commission concludes that *Page 15 
defendant was not prejudiced by such failure to give timely written notice. N.C. Gen. Stat. § 97-22. Richardson v. Maxim Healthcare/AllegisGroup, ___ N.C. App. ___, 657 S.E.2d 34 (2008).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney fees hereinafter approved, defendant shall pay to plaintiff temporary total disability compensation at a rate of $ 195.06 per week from January 29, 2004 until May 25, 2005. This compensation has already accrued and shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one of this award is approved for plaintiff's counsel and shall be deducted from the lump sum payments owed plaintiff and paid directly to plaintiff's counsel.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury of January 24, 2004 for as long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, provide relief, or lessen the period of disability, when bills for the same have been approved in accordance with the procedures adopted by the Commission.
4. Defendant shall pay the costs.
This the ___ day of April 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 CONCURRING: *Page 16 
 S/___________________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 17